No. 23-2545

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

LARS JENSEN, an individual,

*Plaintiff-Appellant*,

v.

NATALIE BROWN, in her individual and official capacities as
Administrative Officer at Truckee Meadows Community College;
JULIE ELLSWORTH, in her individual and official capacities as
Dean of Science at Truckee Meadows Community College; ANNE
FLESHER, in her individual and official capacities as Dean of Math
and Physical Sciences at Truckee Meadows Community College;
KARIN HILGERSOM, in her individual and official capacities as
President of Truckee Meadows Community College; MARIE
MURGOLO, in her individual and official capacities as Vice
President of Academic Affairs at Truckee Meadows Community
College; MELODY ROSE, in her individual and official capacities as
Chancellor of the Nevada System of Higher Education,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:22-cv-00045-LRH-CLB
Hon. Larry R. Hicks

_____

## APPELLANT'S OPENING BRIEF

_____

[counsel of Plaintiff-Appellant listed on next page]

John M. Nolan, Esq. (NSBN 15790)
2750 Peavine Creek Rd.
Reno, Nevada 89523
Telephone: (775) 786-5477
jmnolan84@gmail.com
*Attorney of Record for Plaintiff-Appellant*

Michael Langton, Esq. (NSBN 290)
801 Riverside Drive Reno, NV 89503
Telephone: (775) 329-3612
mlangton@sbcglobal.net

Mark Mausert, Esq. (NSBN 2398)
Sean McDowell, Esq. (NSBN 15962)
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
mark@markmausertlaw.com
sean@markmausertlaw.com
*Attorneys for Plaintiff-Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... vi

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ..........................................................3

ISSUES PRESENTED..............................................................................4

STATEMENT OF THE CASE...................................................................5

    I. FACTUAL BACKGROUND……………………………………….…….5

    II. PRIOR PROCEEDINGS……………………………………….…….8

SUMMARY OF THE ARGUMENT .......................................................9

STANDARD OF REVIEW .....................................................................11

ARGUMENT ..........................................................................................14

    I.    THE DISTRICT COURT ERRED BY GRANTING SOVERIGN
        IMMUNITY TO DEFENDENTS-APPELLEES ON THE BASIS
        THAT DR. JENSEN DID NOT SEEK PROSPECTIVE
        INJUNCTIVE RELIEF. ....................................................................14

        A.    Dr. Jensen sought prospective injunctive relief from the
            continuing violation of constitutional rights by seeking
            expungement of negative personnel record……………..……16

        B.    Dr. Jensen sought prospective injunctive relief………………20

        C.    Allowing Public Universities in Nevada to inflict ongoing
            injuries through internal personnel documents undermines core
            constitutional protections…………………………….………23

II.     THE DISTRICT COURT ERRED BY FINDING THAT THE INDIVIDUALLY NAMED DEFENDANTS-APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY…………….…………26

     A.     Dr. Jensen was a victim of First Amendment Retaliation by Defendants that was ongoing for years and is still being inflicted on him……………………………………….……28

          1.     The Supreme Court in *Garcetti* and the Ninth Circuit in *Eng* and *Demers* reaffirmed the *Pickering* line of cases for public employee speech related to academic scholarship or classroom instruction……………….……30

          2.     Qualified Immunity was only granted in *Demers vs. Austin* because it clarified the law in the Ninth Circuit in the wake of *Garcetti*…………………………..…….30

          3.     Other Circuits have followed the Ninth Circuit……….32

          4.     *State ex rel. Richardson v. Board of Regents* put Defendants-Appellees on notice that retaliation for speaking on matters of public concern for distributing handouts was illegal…………………………………...35

          5.     Multiple sections of the NSHE Handbook prohibit the conduct in question and Defendants-Appellees as administrators were on notice…………………….…..38

     B.     Dr. Jensen was denied Procedural Due Process………..…….39

          1.     Dr. Jensen was denied his liberty interests in ensuring his First Amendment rights were protected by the Constitution, his rights under state law were protected, and his rights in the NSHE handbook were protected....40

          2.     Dr. Jensen was denied his property interests in his right to academic freedom, right to maintain standards of curriculum, right to have processes for faculty terminations followed, and right to not be charged with insubordination for distributing handouts…………..…41

iv

C.     Dr. Jensen was denied Equal Protection by being treated
       differently than other similarly situated professors……..……43

D.     The Magistrate Judge allowed discovery to continue…..………45

CONCLUSION ..........................................................................................46

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamian v. Lombardi,*
    608 E2d 1224 (9th Cir. 1979), cert. denied, 446 U.S. 938 (1980)…...38

*Adams v. Trs. Of the Univ. of N.C.-Wilmington,*
    *640 F.3d (4th Cir. 2011)*……………………………………………...33

*AmerisourceBergen Corp. v. Dialysist W., Inc.,*
    465 F.3d 946 (9th Cir. 2006)…………………………………………13

*Anderson v. Creighton,*
    483 U.S. 635 (1987)……………………………...…………13, 45

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)……………………………...……………31

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
    824 F.3d 858 (9th Cir. 2016)……………………….……………11, 15

*Armstrong v. Reynolds,*
    22 F.4th 1058 (9th Cir. 2022)……………………………………..39, 41

*Ballou v. McElvain,*
    29 F.4th 413 (9th Cir. 2022)…………………………………...……26

*Barone v. City of Springfield,*
    902 F.3d 1091 (9th Cir. 2018)………………………….…………29

*Bd. of Regents v. Roth,*
    408 U.S. 564 (1972)………………………………………...……42

*Benavidez v. Cty. Of San Diego,*
    993 F.3d 1134 (9th Cir. 2021)…………………………...………12

*Boyd v. Benton County,*
    374 F.3d 773 (9th Cir. 2004)…………………………………………12

*Brooks v. United States,*
    127 F.3d 1192 (9th Cir. 1997)…………………………………………..42

*Brosseau v. Haugen,*
    543 U.S. 194 (2004)……………………………………………………27

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019)……………………………………..33, 34

*Camarillo v. McCarthy,*
    998 F.2d 638 (9th Cir. 1993)…………………………………………28

*Castro v. County of Los Angeles,*
    833 F.3d 1060 (9th Cir. 2016)………………………...……………26

*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000)………………………………………..47

*Chappell v. Mandeville,*
    706 F.3d 1052 (9th Cir. 2013)………………..………………...27, 40

*City of Cleburne v. Cleburne Living Ctr.,*
    *473 U.S. 432, 439 (1985)*………………………………………………43

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014)… 4, 10, 28, 29, 30, 31, 32, 33, 34, 35, 46

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.,*
    375 F.3d 861 (9th Cir. 2004)…………………………………………14

*Doe v. Lawrence Livermore Nat'l Lab'y,*
    131 F.3d 836 (9th Cir. 1997)…………………………………………22

*Doe v. Petaluma City Sch. Dist.,*
    54 F.3d 1447 (9th Cir. 1995)…………………………………………45

*Doyle v. City of Medford,*
    606 F.3d 667 (9th Cir. 2010)…………………………………………42

*Draper v. Coombs,*
    792 F.2d 915 (9th Cir. 1986)……………………..……………..35

*Dunn v. Castro,*
    621 F.3d 1196 (9th Cir. 2010)…………………………………..45

*Elder v. Holloway,*
    510 U.S. 510 (1994)……………………………………………12

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003)………………………..……14, 40, 43

*Eng v. Cooley,*
    552 F.3d 1062 (9th Cir. 2009)…………………..………29, 30, 31

*Erickson v. United States,*
    67 F.3d 858 (9th Cir. 1995)…………………………………..42

*Ex Parte Young,*
    209 U.S. 123 (1908)……………….....11, 15, 16, 17, 19, 20, 21, 25

*Flint v. Dennison,*
    488 F.3d 816 (9th Cir. 2007)………………………………16

*Foster v. City of Indio,*
    908 F.3d 1204 (9th Cir. 2018)……………………..……27

*Garcetti v. Caballos,*
    547 U.S. 410 (2006)……………….……...10, 30, 31, 32, 33, 34

*George v. Edholm,*
    752 F.3d 1206 (9th Cir. 2014)…………………………..12

*Green v. Mansour,*
    474 U.S. 64 (1985)………………………………..…15

*Grossman v. City of Portland,*
    33 F.3d 1200 (9th Cir. 1994)………………………………35

*Hafer v. Melo,*
    502 U.S. 21 (1991)……………………………………………...…15

*Hamilton v. Endell,*
    981 F.2d 1062 (9th Cir. 1992)……………………………………...…12

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)………………………………………………12

*Hatter v. L.A. City High Sch. Dist.,*
    452 F.2d 673 (9th Cir. 1971)………………………………………16

*Healy v. James,*
    408 U.S. 169 (1972)………………………………………………25

*Heim v. Daniel,*
    No. 2201135 (2d Cir. 2023)………………………………………33

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018)……………………………………...…14

*Hope v. Pelzer,*
    536 U.S. 730 (2002)……………………………………………..13, 31

*Johnson v. Rancho Santiago Cmty. Coll. Dist.,*
    623 F.3d 667 (9th Cir. 2010)……………………………………...….42

*Karl v. City of Mountlake Terrace,*
    678 F.3d 1062 (9th Cir. 2012)…………………………………13, 26

*Kelley v. Borg,*
    60 F.3d 664 (9th Cir. 1995)……………………………………….…27

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.,*
    385 U.S. 589 (1967)……………………………………………25, 29, 36

*Kisela v. Hughes,*
    138 S. Ct. 1148 (2018)……………………………………………27

*K.J. ex rel. Johnson v. Johnson,*
　　2023 WL 6378035 (S.D. Cal. September 28, 2023)…………...……16

*Koala v. Khosla,*
　　931 F.3d 887 (9th Cir. 2019)……………………………………..11, 15

*Kohn v. State Bar of California,*
　　Case No. 20-17316 (9th Cir. 2023)…………………………...…14

*Kor Media Group, LLC v. Green,*
　　*294 F.R.D. 579 (D. Nevada 2013)*…………………………...…46

*Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. Of Higher Educ.,*
　　616 F.3d 963 (9th Cir. 2010)……………………………..……14, 47

*Kwan v. SanMedica Int'l,*
　　854 F.3d 1088 (9th Cir. 2017)…………………………………..…13

*Lane v. Franks,*
　　573 U.S. 228 (2014)………………………………………………26

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.,*
　　869 F.3d 795, (9th Cir. 2017)…………………………………...11

*Lovell v. Chandler,*
　　303 F.3d 1039 (9th Cir. 2002)………………………………11, 35

*Lund v. Cowan,*
　　5 F.4th 964 (9th Cir. 2021), cert. denied, 142 S. Ct. 900 (2022)……..14

*Mabe v. San Bernardino County,*
　　237 F.3d 1101 (9th Cir. 2001)…………………………………..12

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
　　519 F.3d 1025 (9th Cir. 2008)…………………………………..13

*Marbury v. Madison,*
　　5 U.S. (1 Cranch) 137 (1803)……………………………………..47

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006)…………………………………13, 15, 44

*Martinez v. Stanford,*
   323 F.3d 1178 (9th Cir. 2003)………………………………………..12

*Mendoza v. Strickler,*
   51 F.4th 346 (9th Cir. 2022)………………………………………..17

*Meriwether v. Hartop,*
   992 F.3d 492, 505 (6th Cir. 2021)…………………………………34

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985)………………………………………………45

*Monnell v. N.Y.C. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978)…………………………………………….....15

*Monteleone v. University of Arizona Dean of Student's Office,*
   2021 WL 120905 (D. Ariz. January 11, 2021)………………….....17

*Morales v. Fry,*
   873 F.3d 817 (9th Cir. 2017)………………………………………12

*Murray v. Williams,*
   46 F.Supp.3d 1045, 1060 (D. Nevada September 11, 2014)………..31

*Nehad v. Browder,*
   929 F.3d 1125 (9th Cir. 2019)………………………………….…..12

*Nunez v. City of Los Angeles,*
   147 F.3d 867 (9th Cir. 1998)…………………………………..…..42

*Osolinski v. Kane,*
   92 F.3d 934 (9th Cir. 1996)……………………………….……….27

*Papasan v. Allain,*
   478 U.S. 265 (1986)………………………………………………15

*Pearson v. Callahan,*
    555 U.S. 223 (2009)……………………………………………26

*Perry v. Sindermann,*
    408 U.S. 593 (1972)……………………………………………42

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,*
    *391 U.S. 563 (1968)*…………………………...4, 10, 28, 30, 32, 33, 34

*Polanco v. Diaz,*
    No. 22-15496 (9th Cir. 2023)…………………………...………26

*Porter v. Bowen,*
    496 F.3d 1009 (9th Cir. 2007)………………………………...…13

*Portman v. County of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993)…………………………………….39

*Preiser v. Newkirk,*
    422 U.S. 395 (1975)……………………………………………22

*Presbyterian Church (U.S.A.) v. United States,*
    870 F.2d 518 (9th Cir. 1989)……………………………….…..21, 22

*Procunier v. Martinez,*
    416 U.S. 396 (1974)………………………………...………….40

*Ray v. Cnty Of Los Angeles,*
    935 F.3d 703 (9th Cir. 2019)…………………………………….11

*Robinson v. Prunty,*
    249 F. 3d 862 (9th Cir. 2001)…………………………...……12

*R.W. v. Columbia Basin College,*
    77 F.4th 1214 (9th Cir. 2023)………………...…10, 11, 12, 15, 16, 22

*Saucier v. Katz,*
    553 U.S. 194 (2001)……………………………………………12

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998)……………………………...……42

*State ex rel. Richardson v. Board of Regents*,
   70 Nev. 347, 269 P.2d 265 (1954)……1, 14, 21, 31, 32, 35, 36, 37, 43

*Siegert v. Gilley*,
   500 U.S. 226 (1991)……………………………………………45

*Sweezy v. N.H. ex rel. Wyman*,
   354 U.S. 234 (1957)……………………………………………25

*Tellis v. Godinez,*
   5 F.3d 1314 (9th Cir. 1993)…………………………………..42

*Thornburgh v. Abbott,*
   490 U.S. 401 (1989)……………………………………...………40

*T.L. v. Orange Unified School District, et al*.,
   2024 WL 305387 (C.D. Cal. January 9, 2024)……………….…16

*Tobias v. Arteaga*,
   996 F.3d 571 (9th Cir. 2021)…………………………………12

*Trevino v. Gates,*
   99 F.3d 911 (9th Cir. 1996)…………………………………..27

*United States v. Lanier*,
   520 U.S. 259 (1997)……………………………………………13

*Virginia Office for Protection and Advocacy v. Stewart*,
   536 U.S. 247 (2011)……………………………………………17

*Vitek v. Jones,*
   445 U.S. 480 (1980)………………………………….…40, 41

*Watkins v. City of Oakland, Cal.,*
   145 F.3d 1087 (9th Cir. 1998)………………………………27

*Weilburg v. Shapiro,*
488 F.3d 1202 (9th Cir. 2007)……………………………….……..…35

*White v. Pauly,*
580 U.S. 73 (2017)……………………………………………...…27

*Zimmerman v. City of Oakland,*
255 F.3d 734 (9th Cir. 2001)…………………………………13, 15, 44

## Statutes

28 U.S.C. § 1291……………………………………….…………3

28 U.S.C. § 1331……………………………………….…………3

28 U.S.C. § 1343……………………………………………….3

28 U.S.C. § 2201……………………………………………9

42 U.S.C. § 1983……………………………...3, 4, 5, 8, 9, 26, 28, 35, 39, 45

Nevada System of Higher Education Handbook, Title 2, Chapter 2 § 2.1.3 …………………………………………………………...…6, 38

Nevada System of Higher Education Handbook, Title 2, Chapter 2 § 2.1.4 …………………………………………………………...38

Nevada System of Higher Education Handbook, Title 2, Chapter 2 § 2.3.4 …………………………………………………………...38

Nevada System of Higher Education Handbook, Title 2, Chapter 6.2.1.z…39

## Rules

FRCP 12 (b)(6)…………………………………………………13, 46

FRCP 15(a)(2)…………………………………………………....…13

FRCP 12(b)(6) ...................................................................... 13, 47

**Other Authorities**

AAUP, 1915 Declaration of Principles on Academic Freedom and Academic Tenure, AAUP Policy Documents an Reports 3 (11th ed. 2015)…....38

AAUP, 1940 Statement of Principles on Academic Freedom and Tenure, AAUP Policy Documents and Reports 13 (11th ed. 2015)……….…38

Arthur E. Bestor, Jr., *Aimlessness in Education*, The Scientific Monthly, Vol. 75, No. 2 (Aug. 1952), pp.109-116……………………..………36

David Demers, 7-Step Plan for Improving the Quality of the Edward R. Murrow School of Communication and Making it Financially Independent (2007)……………………………………………….32

J. Dee Kille, Academic Freedom Imperiled: The McCarthy Era at the University of Nevada (2004)…………………………………………1

Lars Jensen, On the Math Pathways at TMCC - A Look Under the Hood (2020)…………………………………………………....1, 6, 7

Terry Patraw, One Thousand Showers: A University Immersed in a Culture of Retaliation and an Avalanche of Lies (2013)………………....…1

U.S. Const. Amend I…………………………………………………..passim

U.S. Const. Amend XI…………………………………………….…4, 8, 14

## INTRODUCTION

Plaintiff-Appellant ("Dr. Jensen") alleges that Defendants-Appellees, all administrators within Nevada System of Higher Education ("NSHE")[1], violated the United States Constitution, federal statute, and state law by retaliating against him for exercising his First Amendment right to express concerns about changes in mathematics curriculum standards and an erosion of shared governance at Truckee Meadows Community College ("TMCC"). ER-29-33; ER-206-222. Dr. Jensen was particularly concerned about the "Co-Requisite Policy" passed by the Board of Regents of the NSHE in June of 2019. ER-31; ER-212-215. Dr. Jensen attempted to professionally exercise his constitutional right as a professor to speak on matters of public concern related to scholarship or teaching in various public forums to address the Co-Requisite Policy and the deterioration of shared governance through email, department meetings, public comment at public events, and by distribution of a handout titled "On the Math Pathways-Looking Under the Hood." ER-236; ER-29; ER-61-62; ER-64-66; ER-68-69; ER-71-72.

---

[1] NSHE is colloquially referred to as the fourth branch of government in Nevada. This derives from a Nevada State Supreme Court decision from 1954 involving eerily similar facts to this case. *State ex rel Richardson v. Board of Regents*, 70 Nev. 347, 269 P.2d 265 (1954); J. Dee Kille, Academic Freedom Imperiled: The McCarthy Era at the University of Nevada (2004). The *Richardson* case and the cases that followed created a legal structure that lacks sufficient oversight for NSHE. This has created an internal culture where violations of civil rights occur with increasing frequency. *See* Terry Patraw, One Thousand Showers: A University Immersed in a Culture of Retaliation and an Avalanche of Lies (2013).

Defendants-Appellees in this case refused reasoned debate and instead decided to stifle all dissent and enforce dogma. As a result of trying to professionally address his concerns Dr. Jensen was subjected to multiple adverse employment actions, investigated, publicly humiliated, subjected to fake inquiries to the university police department, and subjected to a procedurally flawed termination hearing. ER-32-33; ER-272-275; ER-211-222. Dr. Jensen is a victim of violations of his constitutionally protected civil rights under both federal and state law.

The district court in granting sovereign immunity and qualified immunity to Defendants-Appellees ignored the Supreme Court's holding from *Garcetti* and the Ninth Circuit's holding in *Demers*. The district court ignored clearly established law and considerable evidence that Dr. Jensen's distribution of a handout and comments were protected by the First Amendment. The tragic result of the misguided ruling of the district court is that it placed the illegal actions of specific bad actors beyond legal review and away from a jury to review their illegal conduct. This occurred even after undisputed evidence was presented of policy violations, conflicts of interests, illegal investigations, and retaliation against Dr. Jensen. ER-211-222; ER-30-33; ER-51-72. In Nevada there may still be a wild west mentality that perceives NSHE to be untouchable as the fourth branch of

government, but in the federal system stare decisis and the U.S. Constitution reign supreme.

Therefore, Dr. Jensen respectfully requests that this honorable Court reverse and remand the district court's order with instructions to enter judgment in his favor for the First Amendment retaliation cause of action and for trial on the other causes of action.

## JURISDICTIONAL STATEMENT

Dr. Jensen's First Amended Complaint raised claims that arose under the United States Constitution and 42 U.S.C. § 1983. The District Court exercised original jurisdiction over the subject matter of the claims pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction). Venue was proper before the Northern Division of the United States District Court for the District of Nevada since all events or omissions giving rise to Dr. Jensen's claims occurred in the District of Nevada, Washoe County.

The District Court granted the pending motion to dismiss in favor of Defendants-Appellees on all claims in an opinion and order dated September 27, 2023, and ordered the clerk of the court to close the case. ER-6-25. That order constituted a final order over which this honorable Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court also denied Dr. Jensen's request to amend his first amended complaint and his request to amend his Opposition to the Motion

to Dismiss. ER-49; ER-6. Dr. Jensen timely filed his notice of appeal on October

2, 2023, properly invoking this Court's jurisdiction. ER-284-286; ER-297.

## ISSUES PRESENTED

This appeal presents six primary issues:

1.     Did the District Court err by granting Eleventh Amendment sovereign

immunity to Defendants-Appellees on the basis that Dr. Jensen did not seek

prospective injunctive relief by requesting the expungement of negative records

that violated his constitutionally protected rights?

2.     Did the District Court err by granting Eleventh Amendment sovereign

immunity to Defendants-Appellees on the basis that Dr. Jensen did not seek

prospective injunctive relief through injunctions to stop the ongoing violations of

his constitutionally protected rights that were part of a pattern and practice of

Defendants-Appellees?

3.     Did the District Court err in holding that Defendants-Appellees were

entitled to qualified immunity for engaging in First Amendment retaliation under

42 U.S.C. § 1983 against Dr. Jensen by finding that *Demers v. Austin* and the

*Pickering* line of cases were not clearly established law at the time of the alleged

misconduct even though the Ninth Circuit ruled otherwise, and state law put

Defendants-Appellees on notice that their conduct was illegal?

4.    Did the District Court err in holding that the Defendants-Appellees were entitled to qualified immunity under 42 U.S.C. § 1983 for violating Dr. Jensen's procedural due process rights under the Fourteenth Amendment by not considering Dr. Jensen's property and liberty interests in academic freedom, right to maintain standards of curriculum, right to have processes for faculty determinations followed, and right to not be charged with insubordination for distributing handouts?

5.    Did the District Court err in holding that the Defendants-Appellees were entitled to qualified immunity under 42 U.S.C. § 1983 for violating Dr. Jensen's equal protection rights by denying him academic freedom but allowing other professors to exercise their academic freedom?

6.    Did the District Court abuse its discretion by denying Dr. Jensen leave to amend his first amended complaint after the Magistrate Judge had already denied a stay of discovery that was brought by Defendants-Appellees on the basis of qualified immunity and sovereign immunity?

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

Starting in approximately 2017, Dr. Jensen began expressing concerns regarding the lowering of standards for mathematics curriculum and deterioration of shared governance at TMCC under his obligation in the NSHE Handbook to be

5

"…responsible for the maintenance of appropriate standards of scholarship and instruction." ER-30; ER-212-214; NSHE Handbook, Title 2, Chapter 2 § 2.1.3. The Board of Regents for the NSHE passed the Co-Requisite Policy in June of 2019, which deeply concerned Dr. Jensen. ER-212-213; ER-189-191.

On January 21, 2020, Dr. Jensen attended a Math Summit open to the public at TMCC where he was denied the opportunity to speak and distribute a handout in violation of the First Amendment. ER-29-33; ER-56-72. Dean Julie Ellsworth held the Math Summit to discuss implementation of the Co-Requisite Policy for the math department at TMCC. ER-57-59; ER-31-32; ER-212-215. The Math Summit consisted of presentations, a question-and-answer session, and breakout room training. ER-57-59. Dr. Jensen attempted to speak during the question-and-answer session like other members of the community but was denied. ER-31-32; ER-212-215. Dean Ellsworth directed Dr. Jensen to use the "parking lot," which was a board to post comments while allowing other attendees to freely make comments. *Id.* After being denied the opportunity to speak Dr. Jensen went to his office and printed out a handout that summarized the comment that he was denied. *Id.* The content of the handout is reproduced below:

> **On the Math Pathways – Looking Under the Hood**
> **Summary**
> • **Graduating from WCSD** requires students to pass Algebra 1, Geometry, and Algebra 2. ( Algebra 1 is the same as Math 95, Algebra 2 is the same as Math 96).

6

- **Regents Mandate:** Put students into a college level math class, possibly with an additional 1-3 co-req credits to fill any holes they may have in Algebra 1-2 or Geometry.
- **Math Department Response to the Mandate:** The department has decided that the mandate cannot be carried out without a drop in completion rates if we maintain the current academic level of Math 120. Therefore the department has decided to lower the academic level of Math 120 so students will be able to complete the course at current rates. (The department has allowed completion rates to dictate the academic level of an exit math course.)
- **What is the Level of the New Math 120?** In the words of the Math 120 co-req committee, "*...a student completing Math 120 may be ready for Math 95.*" Paraphrasing, this means that "*a student graduating from college may be ready for middle school math.*" (This is an absurd statement. The department has decided to comply with the Regent's mandate by lowering the academic level of its classes. This is in clear violation of the intent of the mandate.)
- **Impact on Our Degree- and Certificate Programs:** The lower academic skills of Math 120 completers will directly impact 31% of our degree- and certificate programs by lowering the math- and technical skills of graduates in these programs.
- **Impact on the Community:** Employers in the community pays our salaries, and subsidizes students' education, through their taxes. *What do they expect in return*? Answer: *Qualified graduates*. It is well known that employers, including all the high-tech companies coming into our area, value math skills because the more math classes a student has taken, the higher salary an employer will pay. Well, employers will soon get much less than they have been paying for. TMCC is planning to do the exact opposite of what the community wants: We are going to lower the level of our exit classes and the math skills of our graduates, in the name of preserving completion rates. ER-236; ER-29; ER-61-62; ER-64-66; ER-68-69; ER-71-72

Dr. Jensen then proceeded to distribute the handout to individuals attending the math summit during the break. ER-60-72. Dean Ellsworth collected all the handouts and forced Dr. Jensen into the hallway. ER-32. In the hallway Dean

7

Ellsworth stated to Dr. Jensen that this was "her workshop" and that Dr. Jensen was not allowed to distribute anything. *Id.* Dean Ellsworth then accused Dr. Jensen of being a "bully," "disobeying her," and being "disruptive." *Id.* Dean Ellsworth then directly stated to Dr. Jensen that he had "made an error by defying her." *Id.*

Prior to and following the event, Dr. Jensen was subjected to a multiyear campaign of harassment and retaliation for attempting to exercise his First Amendment right to comment on matters of public concern. ER-29-33; ER-207-222. This included manufactured notices of reprimand, letters of reprimand, fake inquiries to the university police department against Dr. Jensen, defining Dr. Jensen as insubordinate, lowering Dr. Jensen's annual evaluations from "excellent" to "unsatisfactory," ignoring multiple grievances, subjecting Dr. Jensen to illegal investigations, and attempting to terminate the employment of Dr. Jensen. ER-32-33; ER-215-222.

## II.    PRIOR PROCEEDINGS

On January 26, 2022, Dr. Jensen filed his lawsuit, and on January 28, 2022, he filed his First Amended Verified Complaint. ER-290-291. In his First Amended Complaint Dr. Jensen alleged First Amendment retaliation against the administrators in their official and individual capacities under 42 U.S.C. § 1983, violation of procedural due process rights under 42 U.S.C. § 1983, violation of the

Fourteenth Amendment Equal Protection Clause under 42 U.S.C. § 1983,

Declaratory relief under 28 U.S.C. §§ 2201, and state law claims. ER-224-233.

On March 15, 2022, Defendants-Appellees moved to dismiss the First

Amended Verified Complaint. ER-292; ER-73. Dr. Jensen filed an Opposition to

the Motion to Dismiss on April 13, 2022. ER-26. Defendants-Appellees filed

their Reply on May 4, 2022. ER-121. The District Court entered a Judgment for

Defendants' on September 27, 2023 on all claims on sovereign immunity and

qualified immunity grounds. ER-6; ER-297. The district court also denied leave to

amend the first amended complaint. ER-7; ER-49. On October 2, 2023, Dr. Jensen

timely filed a Notice of Appeal. ER-284-286; ER-297.

## SUMMARY OF THE ARGUMENT

This case raises critical questions involving academic speech on matters of

public concern as it is related to teaching and scholarship. Dr. Jensen spoke on

matters of public concern and was repeatedly retaliated against by administrators

within NSHE. The District Court erred when it held that Defendants-Appellees

were entitled to Eleventh Amendment sovereign immunity and qualified immunity

and denied all claims on a motion to dismiss without granting leave for Dr. Jensen

to amend his complaint. This is especially concerning given that the Magistrate

Judge had already denied a Motion to Stay Discovery that was filed by

Defendants-Appellees based on the defenses of qualified immunity and sovereign

immunity. ER-294; ER-237-244.  Discovery was still ongoing at the time of the district court's order.  ER-297.

The district court committed a reversible error by granting sovereign immunity to Defendants-Appellees.  Dr. Jensen sought prospective injunctive relief by requesting that the district court order negative information be removed from his personnel files and that injunctions be issued to stop the ongoing violations of federal law.  Removal of negative information contained in files is appropriate prospective relief to trigger the narrow exception to sovereign immunity in the Ninth Circuit. *R.W. v. Columbia Basin College*, 77 F.4th 1214, 1227 (9th Cir. 2023).  Further, the injunctive relief requested was based on clear violations of state and federal law.

Further, the district court's ruling that qualified immunity applies because there is no clearly established law should be reversed.  The Supreme Court specifically stated its concern to extend public employee speech to topics involving academic freedom.  *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  This Court agreed and held "…there is an exception to *Garcetti* for teaching and academic writing." *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014).  By issuing the opinion in *Demers* the Ninth Circuit clearly established the law and reaffirmed the *Pickering* line of cases going forward.  *Demers,* 746 F.3d at 406 (clearly establishing in the Ninth

10

Circuit that *Garcetti* does not apply to speech on matters of public concern related to scholarship or teaching).

The district court's order is breathtaking in its neglect of clearly established law and disregard for the ongoing constitutional violations by Defendants-Appellees.  This extreme decision threatens to disregard decades of precedent and would allow state officials in Nevada to violate the U.S. Constitution and federal law with impunity and it undermines a free society.  For these reasons, this case should be reversed and remanded for trial.

## STANDARD OF REVIEW

This Court reviews final orders granting motions to dismiss based on Eleventh Amendment immunity de novo.  *Lovell v. Chandler*, 303 F.3d 1039, 1050 (9th Cir. 2002); *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d. 795, 800 (9th Cir. 2017).  Whether Eleventh Amendment immunity exists is a question of law that is reviewed de novo by this Court.  *Ray v. Cnty. Of Los Angeles*, 935 F.3d 703, 708 (9th Cir. 2019).  The Ninth Circuit reviews "…de novo a dismissal on the basis of sovereign immunity…."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).   In the Ninth Circuit a plaintiff must allege an ongoing violation of federal law seeking prospective injunctive relief.  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019).  Negative records can constitute an ongoing violation of federal law that triggers the *Ex Parte Young* exception.  *R.W.,* 77 F.4th at 1227.

A district court's ruling on qualified immunity is reviewed de novo. *Robinson v. Prunty*, 249 F.3d 862, 865-66 (9th Cir. 2001) (citing *Hamilton v. Endell*, 981 F.2d 1062, 1065 (9th Cir. 1992)); *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *Tobias v. Arteaga*, 996 F.3d 571,579 (9th Cir. 2021); *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir.2021). The Supreme Court held that the doctrine of qualified immunity is "…to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017); *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019).

Whether federal rights asserted by a plaintiff were clearly established at the time of the alleged violation is a question of law reviewed de novo. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1106 (9th Cir. 2001); *See George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014); *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004); *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). For statutory immunity to apply the conduct in question can not have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right in question does not need "previously been held unlawful" only that the

12

"unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). This has been held to be a "fair warning" standard by the Supreme Court. *United States v. Lanier*, 520 U.S. 259, 270 (1997). "Novel factual circumstances" can be sufficient notice. *Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)). In the Ninth Circuit even when there is "no case…. with the same facts" if a "reasonable official…. would have known that it was unlawful to retaliate" that is illegal. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1074 (9th Cir 2012).

All factual allegations should be construed as true and, in a light, most favorable to Dr. Jensen. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court should accept Dr. Jensen's factual allegations as true. *Marder v. Lopez*, 450 F.3d 445,448 (9th Cir. 2006); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). This Court reviews a district court's denial of leave to amend the complaint for abuse of discretion. *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 949 (9th Cir. 2006). Leave to amend should be freely given when it is required under Federal Rule of Civil Procedure 15(a)(2). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."

13

*Hicks v. PGA Tour, Inc*., 897 F.3d 1109 (9th Cir. 2018). The Ninth Circuit has

held that leave to amend a complaint should "be applied with extreme liberality."

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

## ARGUMENT

**I.** **THE DISTRICT COURT ERRED BY GRANTING SOVEREIGN IMMUNITY TO DEFENDANTS-APPELLEES ON THE BASIS THAT DR. JENSEN DID NOT SEEK PROSPECTIVE INJUNCTIVE RELIEF.**

The Eleventh Amendment provides immunity for suits in federal court

against states, state agencies, and state officials sued in their official capacity.[2]

*Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 900

(2022). However, the United States Supreme Court has carved out an exception to

---

[2] This Court has previously held that NSHE is a state entity within the meaning of sovereign immunity. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 883 n. 17 (9th Cir. 2004); *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. Of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). However, both decisions were issued prior to this Court's recent decision in *Kohn v. State Bar of California*, Case No. 20-17316 (9th Cir 2023), which created a three-factor test for determining whether a public entity is an arm of the state for sovereign immunity purposes. The test adopted by this Court is: (1) the state's intent regarding the entity's status; (2) the state's control over the entity; and (3) the entity's effects on the state treasury. Here, NSHE receives special constitutional status under the Nevada constitution, which shows the State's intent for NSHE to be separated from other state public entities in Nevada. Further, NSHE makes is own law, which has the force and effect of statute. *State ex rel Richardson*, 70 Nev. at 347-368. Finally, while NSHE does maintain access to some accounts like that Nevada State Tort Fund, it generates a large percentage of its own money, which is different from other public agencies. The Nevada legislature and citizens of the state have attempted to remove this strange constitutional status through a ballot question in 2020 that was narrowly defeated and in Senate Joint Resolution 7 of the 81st Session of the Nevada Legislature which will go before the voters in November of 2024.

14

state sovereign immunity that permits suits against state actors whose conduct violates federal law. *Ex Parte Young*, 209 U.S. 123, 159-160 (1908). The *Ex Parte Young* doctrine was created to "permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Papasan v. Allain*, 478 U.S. 265, 277 (1986). Under *Ex parte Young* a Plaintiff only needs to "allege" "an ongoing violation of federal law for which they seek prospective injunctive relief. *R.W.*, 77 F.4th at 1221 (citing *Koala*, 931 F.3d at 895). Prospective injunctive relief can also include ancillary measures like practices, policies, or procedures that animate the constitutional violation. *Green v. Mansour*, 474 U.S. 64, 68-71 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monnell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978); *Ariz. Students' Ass'n*, 824 F.3d at 864.

Here, Dr. Jensen alleged multiple ongoing violations of constitutional rights in his First Amended Complaint. Further the facts as alleged by Dr. Jensen should be taken in the light most favorable to him when determining whether he sought prospective injunctive relief. *Marder*, 450 F.3d at 448; *Zimmerman*, 255 F.3d at 737. In Dr. Jensen's complaint, he specifically requested the relief of expungement of negative personnel records and injunctive relief to stop the ongoing constitutional violations.

15

A.    **Dr. Jensen sought prospective injunctive relief from the continuing violation of constitutional rights by seeking expungement of negative personnel records.**

Dr. Jensen sought prospective injunctive relief to have negative information removed from his personnel records related to the retaliation for exercising his constitutionally protected rights.  The Ninth Circuit has held that "expungement" of negative records is an appropriate claim for prospective relief.  *R.W.*, 77 F.4th at 1227.  This case was decided prior to the District of Nevada's decision and was binding precedent that the district court ignored.  Negative information in a student record that may hurt future employment is also prospective injunctive relief. *Hatter v. L.A. City High Sch. Dist.*, 452 F.2d 673, 674 (9th Cir. 1971).  Further, this Court has previously held that expunging disciplinary records "served the purpose of preventing present and future harm."  *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).  Other District Courts have correctly applied the precedent in the Ninth Circuit of cases involving expungement of negative records.  *See T.L. v. Orange Unified School District, et al*., 2024 WL 305387 (C.D. California January 9, 2024)(finding that expunging disciplinary records was appropriate injunctive relief under *Ex Parte Young*.); *KJ ex rel. Johnson v. Johnson*, 2023 WL 6378035, at *6 (S.D. Cal. September 28, 2023)(finding reinstatement, being provided with a copy of a surveillance video, and expungement of the February 8 suspension from disciplinary records fell within the *Ex Parte Young* exception to sovereign

16

immunity); *Monteleone v. University of Arizona Dean of Student's Office*, 2021 WL 120905 at 2* (D. Ariz. January 11, 2021)(finding that reinstatement as a student in good standing and expungement of disciplinary record were both appropriate claims for prospective injunctive relief under *Ex Parte Young*.)

The United States Supreme Court has also held that the production of records that were refused is appropriate prospective relief under the doctrine of *Ex Parte Young*. *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255-256 (2011). Further, the Ninth Circuit has held the suspension of a motor vehicle license, which draws similarities with negative personnel files is prospective injunctive relief falling within the *Ex Parte Young* exception to sovereign immunity. *Mendoza v. Strickler*, 51 F. 4th 346, 353 (9th Cir. 2022).

In his First Amended Complaint, Dr. Jensen asserted the following claims for prospective injunctive relief against Defendants-Appellees related to the expungement of negative information from his records:

> E. An order directing TMCC to fully expunge the following from Dr. Jensen's record and employment files:
> a. March 30, 2020 letter of reprimand from Dean Julie Ellsworth;
> b. letter from Dean Ellsworth dated January 30, 2020;
> c. all materials related to Dr. Natalie Brown's investigation as administrative officer;
> d. all negative comments entered by Dean Julie Ellsworth for the 2019-2020 evaluation;
> e. all negative comments entered by Dean Anne Flesher for the 2020-2021 evaluation;
> f. letter from Dr. Jeffrey Alexander Re: Unsatisfactory Annual Evaluation, Academic Year 2020-2021 dated September 27, 2021;

17

g.  Letter from APRAC Committee to Dr. Jeffrey Alexander dated September 24, 2021;

h.  Letter from Dean Anne Flesher Re: Article 13, part 2 dated September 1, 2021;

i.  Letter from Vice President Murgolo RE: Advisory decision regarding 3 grievances filed by TMCC Lars Jensen dated April 30, 2020;

j.  President Hilgersom letter dated December 21, 2020;

k.  Chancellor Rose letter Re: Lars Jensen Grievance Appeal dated November 24, 2020;

l.  Letter from Dean Ellsworth Re: Article 14 Grievances dated September 3, 2020;

m.  Chancellor Rose letter Re: Grievance Appeal to Chancellor dated July 27, 2021; and

F.  An order directing TMCC to return the 2019-2020 evaluation rating to "excellent;" and return of the 2020-2021 evaluation rating to "excellent;" ER-231-232.

The district court in describing the prospective relief above stated that:

> "Essentially, Dr. Jensen requests (1) monetary compensation for lost salary, and (2) retroactive expungement and restoration of past performance reviews. Such requests more closely resemble recovery of lost wages than true prospective relief addressing ongoing violations." ER-14.

This lazy legal analysis by the district court further highlights the need for a remand and reversal. First, monetary compensation is not included in the above requests. There is no case law that equates files in a personnel record to monetary compensation for sovereign immunity purposes. The case law from the United States Supreme Court and the Ninth Circuit have clearly held that expungement of negative records is appropriate prospective relief. As cited above, multiple other district courts in this Circuit have correctly applied the law.

18

The "unsatisfactory" performance evaluations directly stemmed from violations of Dr. Jensen's constitutionally protected rights. Despite the district court's attempt to characterize this as merely a request for the "restoration of past performance reviews" such a characterization overlooks the broader scope of the requested prospective relief. The continued inclusion of this information constitutes an ongoing violation of federal law.

Furthermore, the mentioned items encompass a letter of reprimand, grievances, and various adverse letters. None of these requests pertain to monetary compensation or restoration of past performance reviews. Rather, they represent negative records that are ongoing violations that fall within the prospective relief exception of *Ex Parte Young*. Even though Dr. Jensen was not terminated, the continued inclusion of these negative materials in his personnel files is violating his constitutional rights related to his ability to speak on matters related to academic teaching and writing. Moreover, the inclusion of these negative files will detrimentally harm his future employment prospects, potential for future promotions, ability to receive future salary adjustments, and continues to harm his overall reputation. Therefore, expungement of this negative information is necessary prospective injunctive relief needed to stop the continuing violations of his rights.

19

Allowing the district court's order to stand would produce absurd results. Essentially, the order would grant state actors in Nevada the right to infringe upon rights guaranteed by the U.S. Constitution, as long as they do so by manipulating records in personnel files and asserting that the files have "monetary" value. Does this mean that public records in Nevada now have a marketplace value that should be charged? Such a conclusion is not only absurd but it also runs counter to state law. Allowing personnel files to be considered monetary compensation has no basis in the law. This unchecked power to flout the law would undermine legal rights and provide no avenue for those harmed by the NSHE to seek redress through the judicial system.

The district court's holding is extreme and threatens the entire *Ex Parte Young* line of cases. It must be reversed and remanded.

### B.     Dr. Jensen sought prospective injunctive relief.

Dr. Jensen endured a protracted campaign of harassment and retaliation spanning several years, orchestrated by the Defendants-Appellees in this case, as a consequence of his engagement in speech addressing matters of public concern. The alleged acts must be construed in Dr. Jensen's favor. Dr. Jensen lives in a perpetual state of apprehension, fearing further retaliation and abuse from Defendants-Appellees due to his exercise of his First Amendment rights. This fear and apprehension are why Dr. Jensen specifically sought prospective injunctive

20

relief and sought the Court to end the Defendants "custom and practice of retaliating against faculty who speak on matters of public concern…" in his First Amended Complaint.  ER-230-231.  This constitutes forward-looking prospective injunctive relief.

Plaintiff-Appellant made multiple claims for prospective injunctive relief that were designed to compel compliance with federal and constitutional law.

Dr. Jensen requested the following prospective injunctive relief:

C.  A declaratory judgment that Defendants' custom and practice of retaliating against faculty who speak on matters of public concern, including Dr. Jensen, violate the First Amendment to the U.S. Constitution as requested in paragraph 148;

D.  A declaratory judgment stating that Defendants' custom and practice of violating procedural due process against faculty in disciplinary hearings, including Dr. Jensen, are unconstitutional and violate the NSHE handbook as requested in paragraph 150;

E.  A declaratory judgment stating that Defendants' custom and practice of charging faculty, including Dr. Jensen, with insubordination violated the NSHE Code and the Nevada Supreme Court Holding in *ex rel Richardson* as requested in paragraph 149;

F.  Enjoining Defendants to rescind their unconstitutional adverse employment actions against Dr. Jensen and to end their custom and practice of taking adverse employment actions against faculty who speak on matters of public concern;   ER-231

The exception created under *Ex Parte Young* and the cases that have followed were designed to prevent future violations of federal and constitutional law.  In this case, Defendants-Appellees have presented no evidence that their illegal actions will cease and there is no reasonable expectation that they will not recur. *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.

1989)(quoting *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)). The record shows that Defendants-Appellees have acted with impunity in violating constitutionally protected rights over a long period of time.

The Defendants-Appellees and the district court's reliance on Dr Jensen not being terminated overlooks the sustained campaign of harassment spanning several years, initiated for simply raising concerns about a policy. Moreover, the district court's ruling erroneously limits prospective injunctive relief to only the employment context. The Ninth Circuit has held that it saw "no reason" to limit prospective injunctive relief "to the employment context." *R.W.*, 77 F.4th at 1214 (discussing *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 840 (9th Cir. 1997)). Dr. Jensen diligently exhausted all internal procedures, including involving outside attorneys, filing grievances, getting outside organizations to send advisory letters, and making written appeals, yet these efforts were futile against Defendants-Appellees sham processes. Given the persistence of the illegal behavior, an injunction is the only viable remedy, which Dr. Jensen properly requested in his First Amended Complaint. ER-230-233. Furthermore, even if the complaint could have been refined, Dr. Jensen specifically requested leave to amend his complaint in his opposition, which the district court denied. ER-49.

The NSHE, often regarded as the de facto fourth branch state government in Nevada, continues to engage in unconstitutional conduct unabated. Without

22

prospective injunctive relief, these ongoing violations of constitutional rights will persist unchecked. Defendants-Appellees failed to show these ongoing violations had ceased and the district court's failure to follow Circuit precedent compounds the urgency of corrective action. Therefore, it is imperative for this Court to reverse and remand the decision of the district court.

### C. Allowing Public Universities in Nevada to inflict ongoing injuries through internal personnel documents undermines core constitutional protections.

Allowing this conduct to persist would lead to absurd outcomes. For instance, acting under the color of law could Defendants-Appellees fabricate false investigations, concoct fake police reports, issue unwarranted reprimands, and commit other violations of federal law, all while safeguarded merely by placing them in a personnel file?[3] Such a flagrant misinterpretation not only contradicts established legal precedent but also defies common sense. Granting NSHE administrators such unchecked power over personnel files not only risks normalizing reprisals against employees who seek to expose wrongdoing or

---

[3] In the context of NSHE, such actions are deeply concerning and potentially dangerous. Attorneys representing NSHE have adopted extreme interpretations of the NSHE Code, leveraging it to prohibit the disclosure of all information contained in personnel files, thus infringing upon constitutional rights. This approach effectively shields potential illegal actions of NSHE administrators by obscuring records within personnel files, thereby impeding transparency and accountability. Such practices could easily facilitate coverups of egregious misconduct including sexual abuse, rape, corruption, discrimination, embezzlement, nepotism, abuse of process, defamation, and other serious crimes. It is alarmingly common for NSHE to deny individuals access to their own files, further exacerbating concerns regarding accountability and fairness.

advocate for change within the system but also threatens to erode public trust and confidence in higher education in Nevada. Such an environment would be a playground for malicious narcissists, psychopathic criminals, and serial predators who would prey on others.[4] Eventually such an outcome would likely lead to NSHE administrators being arrested for abuse of process and other serious crimes. This alarming scenario is particularly troubling in institutions of higher education, which often maintain their own police force and hold significant influence as major employers in their communities. Such unchecked authority not only undermines the integrity of legal proceedings but also poses a grave threat to justice and accountability.

Furthermore, the district court's holding that documents in a personnel file are retroactive monetary compensation is not only ridiculous but also contravenes this honorable Court's established precedent. It is particularly noteworthy that multiple other district courts in this Circuit have correctly applied the law, while

---

[4] NSHE attorneys, representing individuals with unchecked power over personnel files, wield immense influence over investigation outcomes, potentially targeting individuals they deem unfavorable and concealing criminal activities. With absolute control over personnel files, they can manipulate information, withhold crucial evidence, and even fabricate documents to suit their agenda, potentially committing fraud upon a court of law. This scenario is not only untenable but also undermines the very foundation of justice and accountability, posing a grave danger to society as a whole.

24

the district court of Nevada has egregiously missed the mark by such a wide margin.

The protection of First Amendment rights on higher education campuses is paramount for a vibrant society. Allowing campus administrators to violate these constitutional rights without recourse creates a chilling effect on free speech. *See Sweezy v. N.H. ex rel Wyman*, 354 U.S. 234, 250 (1957) (holding that "[t]eachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die."); *see also Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967) (holding that institutions of public higher education should be a marketplace of ideas); *see also Healy v. James*, 408 U.S. 169, 180 (1972) (holding that "state colleges and universities are not enclave immune from the sweep of the First Amendment."). Without the exception under *Ex parte Young*, these and other constitutional principles would be suffocated by campus administrators who exercise virtually unchecked control over viewpoints for which they disagreed and want suppressed.

This Court should reverse and remand the district court's ruling that sovereign immunity bars the prospective injunctive relief requested by Dr. Jensen.

**II.  THE DISTRICT COURT ERRED BY FINDING THAT THE INDIVIDUALLY NAMED DEFENDANTS-APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY.**

Section 1983 was enacted to empower victims of civil rights violations to seek redress for infringements of federal rights perpetrated by government officials.  *See* 42 U.S.C. § 1983.  However, the doctrine of qualified immunity prohibits a court awarding damages against a government official unless the statutory or constitutional right was clearly established at the time of the alleged conduct. *Lane v. Franks*, 573 U.S. 228, 243 (2014); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 821 (2009).  In the Ninth Circuit, the qualified immunity analysis hinges on two key factors: (1) whether the facts the plaintiff alleges make out a violation of a constitutional rights, and (2) whether that right was clearly established at the time the defendant acted.  *Polanco v. Diaz*, No. 22-15496 (9th Cir. 2023) (citing *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022)); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016).

Dr. Jensen alleged violations of his constitutional civil rights pursuant to 42 U.S.C. § 1983 and both the district court and Defendants-Appellees appear to concede that such violations occurred.  To determine whether a right is clearly established, the Court must determine whether the contours of the right were sufficiently clear that every reasonable official would have understood that what they were doing violates that right.  *Karl,* 678 F.3d at 1074.  A right is clearly

26

established when the conduct in question is "beyond debate." *White v. Pauly*, 580

U.S. 73, 78-79 (2017).

In making this determination, the court should "'look to … binding

precedent.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting

*Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). While there does not need to

be "a case directly on point for a right to be clearly established, existing precedent

must have placed the statutory or constitutional question beyond debate." *Foster v.

City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting *Kisela v.

Hughes*, 138 S. Ct. 1148, 1152 (2018)).

The Supreme Court held that a constitutional right is clearly established if

the official had "fair notice that her conduct was unlawful…." *Brosseau v.

Haugen*, 543, U.S. 194, 198 (2004) (per curiam). In addition, the Ninth Circuit has

established that, for the purposes of qualified immunity, it is necessary to survey

the legal landscape and analyze cases that are "…most like the instant case."

*Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996). When identifying the right that

was allegedly violated, a court must define the right more narrowly than the

constitutional provision guaranteeing the right, but more broadly than all of the

factual circumstances surrounding the alleged violation. *See Watkins v. City of

Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998); *Kelley v. Borg*, 60 F.3d

664, 667 (9th Cir. 1995); *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir.

1993).

    **A.**    **Dr. Jensen was a victim of First Amendment Retaliation by Defendants-Appellees that was ongoing for years and is still being inflicted on him.**

The district court and Defendants-Appellees did not dispute that the First

Amendment and Supreme Court case law has long established that the First

Amendment protects a public employee's right to speak on "matters of public

concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). The First

Amended Complaint and Opposition to the Motion to Dismiss clearly alleged and

argued that Defendants violated these clearly established rights. ER-34-42; ER-

212-233. These rights are foundational to protecting free speech within the public

sector.

However, the district court dismissed the clearly established argument by

erroneously stating that "Dr. Jensen consistently uses broad-stroke language and

generalized terms to describe the right at issue in this case…." The Court went on

to state "[s]uch high-level language, paired with only three citations- *Demers*, 746

F.3d 402, the First Amendment, and 43 U.S.C. § 1983 – do not clearly establish the

specific right at issue in this particular case."[5]  The district court's assertion

overlooks the comprehensive presentation of relevant Supreme Court and Ninth

Circuit precedents in Dr. Jensen's Opposition to the Motion to Dismiss. ER-34-42.

These precedents were flagrantly ignored by the district court in its order, leading

to an unjust outcome.  *Id.*

Dr. Jensen's First Amendment retaliation claim relied on many Supreme

Court and Ninth Circuit cases that have held that a government employer cannot

retaliate against a public employee for engaging in protected speech. *Id*; *See Eng v.*

*Cooley,* 552 F.3d 1062, 1072 (9th Cir. 2009); *See also Barone v. City of*

*Springfield*, 902 F.3d 1091, 1102 (9th Cir. 2018).  The district court's decision also

undermined the long-held mandate that "academic freedom" is "a special concern

of the First Amendment."  *Keyishian*, 385 U.S. at 603.

Here, Dr. Jensen clearly identified the right and cited case law that put the

question beyond debate.

---

[55] Judge Hicks' ruling, seemingly echoing the arguments put forth by Defendants-Appellees, reflects a troubling trend in cases involving NSHE within the District of Nevada.  Despite clear precedent established by *Demers*, affirming the right of professors to address matters of public concern, particularly through the distribution of handouts, Judge Hicks chose to dismiss the case entirely rather than allowing for necessary amendments to the complaint.  This pattern of favoring NSHE's interests at all costs has fostered an environment where administrators operate with impunity, seemingly above the law.  Such judicial decisions not only undermine the rights of individuals like Dr. Jensen but also erode trust in the fairness and integrity of our legal system.  While these decisions may stem from a desire to protect a popular public institution, in reality, they shield a small group of administrators engaged in illegal acts at the expense of justice for all.

1. **The Supreme Court in *Garcetti* and the Ninth Circuit in *Eng* and *Demers* reaffirmed the *Pickering* line of cases for public employee speech related to academic scholarship or classroom instruction.**

The Supreme Court held in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), that the First Amendment does not protect the speech of government employees "pursuant to their official duties." *Id.* at 421. When making the ruling in *Garcetti* the Supreme Court specifically cautioned against extending the ruling to "academic scholarship or classroom instruction." *Id* at 425. Building upon this precedent, the Ninth Circuit held in *Demers v. Austin*, that "Garcetti does not apply to speech related to scholarship or teaching." *Demers*, 746 F.3d at 412. The *Demers* decision: (1) identified the right to speak on matter of public concern related to academic scholarship and teaching, and (2) reaffirmed that the *Pickering* line of cases should be applied to speech on matters of public concern related to academic scholarship and teaching. *Id.*

2. **Qualified Immunity was only granted in *Demers v. Austin* because it clarified the law in the Ninth Circuit in the wake of *Garcetti*.**

In *Demers v. Austin*, qualified immunity was granted for two reasons: (1) due to "the uncertain state of the law in the wake of *Garcetti*" and (2) at the time of the ruling "there [was] no Ninth Circuit law on point to inform defendants about whether or how *Garcetti* might apply to a professor's academic speech…." Dr. Jensen's position is that both of these concerns have been addressed by the Ninth

Circuit.  The opinion in *Garcetti* was issued in 2006, the opinion in *Demers* was

issued in 2014, and the main violations in this case occurred in 2020.  Further,

*Demers* is an "on-point" precedent that was issued in 2014 that informed

Defendants-Appellees that it was illegal to retaliate against a professor for speech

related to scholarship or teaching that addressed matters of public concern.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

     The legal landscape governing academic speech in the Ninth Circuit has

been clearly established, particularly in the wake of both *Garcetti* and *Demers*,

which have developed significant case law.  Further, in *Murray v. Williams*, which

was decided the same year as *Demers*, Judge Dorsey of the District of Nevada

explicitly affirmed the "well settled" nature of the law regarding public employee

speech under the First Amendment in the Ninth Circuit post *Demers* and *Eng*.

*Murray v. Williams*, 46 F.Supp.3d 1045, 1060 (D. Nevada September 11, 2014).

Moreover, the existence of longstanding Nevada Supreme Court case law,

exemplified by *State ex rel. Richardson v. Board of Regents*, provides additional

support for the clearly established nature of Dr. Jensen's rights.  *State ex rel*

*Richardson*, 70 Nev. at 265.

     It is beyond debate that *Garcetti* left open the Circuit Courts' ability to apply

the law as it relates to scholarship or teaching.  After the *Garcetti* decision this

Court acted and held in *Demers* that "speech related to scholarship or teaching"

was not applicable to the holding in *Garcetti*. The holding in *Demers* applied the *Pickering* line of cases in the Ninth Circuit to speech on matters of public concern related to academic scholarship or teaching. The *Demers* decision and these prior precedents gave Defendants-Appellees "fair warning" that their conduct was unconstitutional. *Hope*, 536 U.S. at 731. That law has been clearly established for decades. Defendants-Appellees were on notice that it was illegal to retaliate against a professor for exercising his First Amendment right to speak on matters of public concern related to scholarship or teaching. This is especially true of the handout that Dr. Jensen distributed, which was highly similar in content to the 7-Step Plan that was the subject of the *Demers* decision. ER-140-143. It is also factually similar to the *Richardson* case and the *Pickering* case.

For Dr. Jensen there was case law on point – namely *Demers v. Austin* and therefore the district court's decision on qualified immunity as it relates to Defendants-Appellees violating his First Amendment rights should be reversed and remanded with instructions to enter judgment in Dr. Jensen's favor since it has been conceded that constitutional violations occurred.

### 3. Other Circuits have followed the Ninth Circuit.

The Ninth Circuit is one of five circuits (Second, Fourth, Fifth, Sixth, and Ninth) that have unequivocally affirmed the academic protections afforded to professors under the First Amendment, particularly when engaged in core

academic functions such as teaching and writing.   This consensus has been
adopted from the conclusion of Justice Souter in *Garcetti* which recognized the
fundamental importance of preserving academic freedom to foster the vibrant
exchange of ideas that lies at the heart of a free society.

The Second Circuit in *Heim v. Daniel*, No. 2201135 (2nd Cir. 2023),
unequivocally established that *Garcetti*'s scope does not extend to speech related
to academic scholarship or teaching that addressed matters of public concern.
Moreover, the Court reaffirmed the significance of the *Pickering* line of cases as
precedent in such contexts, drawing on the Ninth Circuit's *Demers* decision.  This
ruling reinforces the legal principle that academic freedom is critically important.

The Fourth Circuit following the decision in *Garcetti* held in a public
university case involving speech that an exception to *Garcetti* existed.  The Court
also applied the *Pickering* line of cases to instances of First Amendment retaliation
related to academic scholarship and teaching.  *See Adams v. Trs. Of of the Univ. of
N.C.-Wilmington*, 640 F.3d 550, 562-563 (4th Cir. 2011).   Notably, in *Demers v.
Austin*, Judge Fletcher of the Ninth Circuit Court referenced the Fourth Circuit
decision in *Adams* as an example where a clearly established right was established,
warranting the denial of qualified immunity.

The Fifth Circuit, in *Buchanan v. Alexander,* likewise affirmed that
*Garcetti*'s application does not extend to First Amendment claims stemming from

33

a university professor's speech and conduct within the classroom. *Buchanan v. Alexander*, 919 F.3d 847, 852-853 (5th Cir. 2019). Moreover, the Fifth Circuit reaffirmed the applicability of the *Pickering* line of cases in such contexts, emphasizing the need to balance academic freedom with institutional interests. *Id*. This decision serves as another example of how federal courts have consistently upheld the rights of university professors to engage in speech on matters of public concern without fear of retaliation.

The Sixth Circuit, in *Meriwether v. Hartop*, established an academic freedom exception to *Garcetti*. *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021). In fact, when clearly establishing the precedent in the Sixth Circuit the Court cited to the Ninth Circuit decision in *Demers* as "recogniz[ing] that "if applied to teaching and writing, *Garcetti* would directly conflict with the important First Amendment values previously articulated by the Supreme Court."" *Meriwether*, 992 F.3d at 505(citing *Demers*, 746 F.3d at 411). By citing the holding in *Demers*, the Sixth Circuit reaffirmed the fundamental nature of academic speech and its protection under the First Amendment.

In every circuit that has examined the application of *Garcetti* to academic speech, the consensus has been that *Garcetti's* holding does not apply to speech related to academic scholarship and teaching. Each Circuit, including the Ninth Circuit, has reaffirmed that the *Pickering* line of cases remains the guiding

framework. The Ninth Circuit, notably, reached this correct conclusion earlier than many of its counterparts, underscoring this honorable Court's steadfast leadership in safeguarding academic freedom and constitutional rights for a new generation. This Court's decision in *Demers* reaffirmed its commitment to free expression.

    **4.**      ***State ex rel. Richardson v. Board of Regents* put Defendants-Appellees on notice that retaliation for speaking on matters of public concern or distributing handouts was illegal.**

Where a violation of state law is also a violation of a constitutional right, however, § 1983 does provide a cause of action. *See Lovell*, 90 F.3d at 370; *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Weilburg v. Shapiro*, 488 F.3d 1202, 1207 (9th Cir. 2007). Further, the "existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable officer would find that conduct constitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Here, there was no statute or ordinance that authorized Defendants-Appellees to deny Dr. Jensen's First Amendment rights and retaliate against him and in fact there was specific law in Nevada that prohibited such practices. *See State ex rel Richardson,* 70 Nev. at 347.

In November of 1952, Dr. Frank Richardson, a tenured professor of biology at the University of Nevada, Reno, took the bold step of exercising his First Amendment rights by distributing an article titled "*Aimlessness in Education*."

ER-144-152; *See* Arthur E. Bestor, Jr., *Aimlessness in Education*, The Scientific Monthly, Vol. 75, No. 2 (Aug. 1952), pp. 109-116.  Despite his effort to promote meaningful dialogue on matters relevant to higher education he was immediately met with extreme hostility and reprisal by University of Nevada, Reno administrators.  For this conduct, Dr. Richardson was eventually fired for cause with "insubordination" being used by the Board of Regents of the University of Nevada as the fabricated reason.  The Supreme Court of Nevada, in a landmark ruling before the *Keynesian* case, reversed the termination and reinstated Dr. Richardson and held that distribution of articles on campus was not insubordination.

In the opposition to the motion to dismiss, Dr. Jensen meticulously cited the *Richardson* case no less than 6 times and cited a book written about the case. ER-26-72.  This legal precedent clearly established that university administrators in Nevada cannot retaliate against faculty members for the distribution of scholarly materials addressing matters of public concern.  Not once did Judge Hicks mention the *Richardson* case in his order.  This oversight is particularly egregious given Dr. Jensen's proactive efforts to put the district court on judicial notice of the importance of the *Richardson* decision, all of which were summarily ignored by the district court.  ER-144-152.

36

The existence of clear and binding precedent, as exemplified by the *Richardson* case and its subsequent incorporation into the NSHE Handbook, unequivocally established that university administrators within NSHE were aware of the law governing academic freedom and that retaliation for this type of conduct is illegal. This precedent is not only institutional policy in the NSHE Handbook but firmly rooted in the constitutional principles that safeguard the academic freedom of faculty members. Furthermore, the alignment between state law and federal law in prohibiting retaliation for speaking on matters of concern underscores the universality and clarity of the legal principles governing this case. Nevada law mirrors federal law and leaves no room for ambiguity or uncertainty regarding the illegality of Defendants-Appellees' conduct, and therefore they deserve no leniency or mercy.

Therefore, Defendants-Appellees cannot plausibly claim ignorance of their obligations to uphold Dr. Jensen's rights. Their actions were in contravention of binding legal precedent and NSHE policy. This warrants reversal of the district court's grant of qualified immunity and remand for further consideration in accordance with the established legal standards governing academic freedom and protection against retaliation.

**5.     Multiple sections of the NSHE Handbook prohibit the conduct in question and Defendants-Appellees as administrators were on notice.**

As stated in Dr. Jensen's First Amended Complaint, the NSHE Handbook defines and protects academic freedom. ER-207; *See also* NSHE Handbook, Title 2, Chapter 2, §§ 2.1-2.3.5.  This definition is derived from the American Association of University Professors 1915 Declaration of Principles on Academic Freedom and Academic Tenure and the 1940 Statement of Principles on Academic Freedom and Tenure.   This Court has noted the similarity of AAUP interpretations with the NSHE Code at the University of Nevada, Reno in past decisions.  *See Adamian v. Lombardi*, 608 F.2d 1224, 1227 (9th Cir. 1979), cert. denied, 446 U.S. 938 (1980).   Further, the NSHE Handbook specifically defines acts interfering with academic freedom, which includes "…acts which in effect deny freedom of speech, freedom to be heard and freedom to pursue research of their own choosing to members of the faculty or to invited guests of the Nevada System of Higher Education."  NSHE Handbook, Title 2, Chapter 2, § 2.1.4.  Further, the NSHE Code requires faculty to be "…responsible for the maintenance of appropriate standards of scholarship and instruction."  *See* NSHE Handbook, Title 2, Chapter 2, § 2.1.3.  The NSHE Handbook, Title 2, Chapter 2, § 2.3.4 provides:

> A member of the faculty is a citizen of the community, a member of a learned profession and an employee of an educational institution. A faculty member speaking, writing or acting as a citizen shall be free from institutional censorship or discipline.

38

The Defendants-Appellees in this case as administrators in the NSHE were all on notice that they could not deny academic freedom or retaliate against Dr. Jensen. In fact, such conduct is in violation of the NSHE Code and is grounds to terminate the employment of each of the Defendants-Appellees. *See* NSHE Code, Title 2, Chapter 6, § 6.2.1.z (defining "[a]ny other conduct which violates applicable stated prohibitions, policies, procedures, rules, regulations or bylaws of the Board of Regents or a System institution").

Therefore, Defendants-Appellees were on notice and had fair warning that their conduct was in violation of the NSHE Code, which has the force and effect of statute. *State ex rel Richardson*, 70 Nev. at 347. Further, the protections listed in the NSHE Code mirror the protections for academic freedom and speech on topics of public concern related to academic scholarship and teaching contained in the case law from this Court and the United States Supreme Court.

**B.      Dr. Jensen was denied Procedural Due Process.**

In the Ninth Circuit "[a' section 1983 claim based upon procedural due process…has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022)(quoting *Portman v. County of Santa Clara*, 995 F. 2d 898, 904 (9th Cir. 1993)).

1.    **Dr. Jensen was denied his liberty interests in ensuring that his First Amendment rights were protected by the Constitution, his rights under state law were protected, and his rights in the NSHE Handbook were protected.**

The Supreme Court has concluded that prisoners' First Amendment rights are liberty interests protected by the Constitution. *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), limited on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Further, the Supreme Court has previously held that prisoners have a liberty interest in not being transferred for involuntary psychiatric treatment. *Vitek v. Jones*, 445 U.S. 480, 494 (1980). A state may create a liberty interest through statutes, prison regulations, and policies." *Chappel*, 706 F.3d at 1063.

The precedent in this Circuit is that the types of liberty interests alleged by Dr. Jensen are protected. *Id.* Admittedly, the allegations could have been better fleshed out in the First Amended Complaint, but at the same time the district court denied Dr. Jensen's request to amend his complaint. ER-49; ER-6-25. This was an abuse of discretion. In the Ninth Circuit leave to amend a complaint should "be applied with extreme liberality." *Eminence Capital, LLC,* 316 F.3d at 1051.

Here, Dr. Jensen had liberty interests in ensuring that his First Amendment rights were protected by the Constitution, his rights under state law were protected, and his rights in the NSHE Handbook were protected. Further, Dr. Jensen had a liberty interest in not being subjected to retaliation or arbitrary termination hearings, which are substantively very similar to prisoners not being transferred for

involuntary psychiatric treatment. *Vitek*, 445 U.S. at 494. In the First Amended Complaint and the Opposition to the Motion to Dismiss alleged and argued that these liberty interests were violated by Defendants-Appellees. The Court failed to construe these allegations as true and in a light favorable to Dr. Jensen and committed reversible error. Further, even if the Court had questions, Dr. Jensen specifically requested leave to amend his complaint in the Opposition to the Motion to Dismiss, which the district court denied. ER-49; ER-6-25. The complaint could have been strengthened by amendment, especially in light of the additional discovery that had been disclosed by Defendants-Appellees. ER-272-275. The district court's denial of leave to amend was an abuse of discretion and should be reversed.

> **2.  Dr. Jensen was denied his property interests in his right to academic freedom, right to maintain standards of curriculum, right to have processes for faculty terminations followed, and right to not be charged with insubordination for distributing handouts.**

In the Ninth Circuit, a property interest is defined as "an entitlement to the benefit at issue, conferred through statute, regulation, contract, or practice." *Armstrong*, 22 F 4th at 1066-67. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. … [The person] must, instead, have a legitimate claim of entitlement to it. … Property interests, of

41

course, are not created by the Constitution. Rather[,] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972); *Gerhart v. Lake Cty*., 637 F.3d 1013, 1019 (9th Cir. 2011); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1030 (9th Cir. 2010); *Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010); *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1199–1201 (9th Cir. 1998) (clarifying that property interests can be created by common law principles even when in conflict with state statutes); *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998); *Brooks v. United States*, 127 F.3d 1192, 1194 (9th Cir. 1997); *Erickson v. United States*, 67 F.3d 858, 862 (9th Cir. 1995); *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

The district court denied Dr. Jensen's claims for violations of his property interests in footnote 9 by stating:

> "Dr. Jensen attempts to allege additional "property interests" to his procedural due process claim including "academic freedom, right to maintain standards of curriculum, right to have the processes for faculty terminations followed, and right to not be charges with insubordination for distributing handouts." ECF No. 33 at 18. While Dr. Jensen points to instances in the First Amended Complaint in which such subjects *are loosely referred*, the Court finds that none of them are expressly alleged as property interests as to his procedural

due process claim. As such, they are ***disregarded for the analysis of this claim***." ER-19.

Here, Dr. Jensen alleged multiple property interests that were rejected by the district court. Further, these procedural due process violations are ongoing because of the inclusion of negative information in Dr. Jensen' personnel files. Dr. Jensen specifically requested leave to amend his complaint and would be better able to state how the following property rights were denied to him in a second amended complaint. The Ninth Circuit has held that leave to amend a complaint should "be applied with extreme liberality." *Eminence Capital, LLC*, 316 F.3d at 1051.

### C. Dr. Jensen was denied Equal Protection by being treated differently than other similarly situated professors.

"[A]ll persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Dr. Jensen alleged that Defendants-Appellees treated him differently than other similarly situated professors. Specifically, he alleged that Defendants-Appellees punished him for attempting to exercise his First Amendment rights at the Math Summit but took no action against others who spoke at the public event. The NSHE Code provides all professors with academic freedom and requires that the system not deny academic freedom to professors. In NSHE, their Code has the force and effect of statute. *State ex rel Richardson*, 70 Nev. at 347. In this case, Dr. Jensen was denied his

academic freedom and treated differently than other professors. Further, academic freedom is protected under established law from the Supreme Court and Ninth Circuit. By denying Dr. Jensen's academic freedom the Defendants-Appellees violated his equal protection rights under the U.S. Constitution.

The district court characterization of Dr. Jensen's assertions as "conclusory statements" fails to appreciate the gravity of the extreme First Amendment violations and retaliation perpetuated by Defendants-Appellees. Dr. Jensen's allegations were not mere conclusory statements; they were substantive claims rooted in the egregious mistreatment he endured. As requested in the Opposition to the Motion to Dismiss, if the district court found the factual allegations insufficient, it should have granted leave for Dr. Jensen to file a Second Amended Complaint, allowing him the opportunity to bolster his claims. Moreover, at the Motion to Dismiss state, factual allegations should be construed as true and viewed in the light most favorable to Dr. Jensen. *Marder*, 450 F.3d at 448; *Zimmerman*, 255 F.3d at 737.

The district court abused its discretion when it did not construe factual allegations in a light most favorable to Dr. Jensen and denied leave to amend the First Amended Complaint.

### D.    The Magistrate Judge allowed discovery to continue.

The Ninth Circuit and Supreme Court have both held that the district court should not allow discovery until it has resolved the legal question of whether there is a clearly established right. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010); *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). Moreover, if the court determines that an official is entitled to qualified immunity on any § 1983 claims for damages that are part of the action, the court should dismiss those claims prior to discovery. See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); see also *Anderson*, 483 U.S. 635, 646 n.6.

Magistrate Judge Baldwin denied Defendants-Appellees Motion to Stay Discovery, which was predicated on the defense of qualified immunity and sovereign immunity for all claims. ER-294; ER-237-244; ER-245-254. Notably, discovery was still active when Judge Hicks issued his Order, wherein he took the extreme position of granting the motion to dismiss entirely and denying leave to amend the complaint. ER-297; ER-49. Furthermore, additional evidence surfaced during discovery, indicating that Defendants-Appellees had conspired against Dr. Jensen to weaponize the university police department to further retaliate against his First Amendment rights. ER-264-275. Despite Dr. Jensen's efforts to incorporate

this evidence by filing a Motion to Amend his Opposition, Judge Hicks denied the Motion. ER-6-25; *Id.*

The Magistrate Judge denied the Motion to Stay Discovery on grounds of Qualified Immunity and Sovereign Immunity after conducting a "preliminary peek" during which she determined, upon review of the filings and oral arguments, that these defenses were not applicable. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579 (D. Nevada 2013). Given that these issues were already decided by the magistrate judge, the district court's rulings on qualified immunity and sovereign immunity should be reversed and the case remanded for trial.

## CONCLUSION

The Ninth Circuit unequivocally established in *Demers v. Austin* that speech on matters of public concern related to academic scholarship and teaching is safeguarded under the First Amendment, thereby establishing a clearly defined right. Despite this precedent, Defendants-Appellees repeatedly infringed upon this protected right by retaliating against Dr. Jensen for speech they opposed. The district court's order granting the motion to dismiss based on Eleventh Amendment sovereign immunity and qualified immunity was erroneous. Allowing this misguided ruling to stand puts at risk academic freedom, which threatens the future of American society by chilling speech.

Dr. Jensen meticulously detailed the events and facts and provided extensive evidence as to why the Defendants-Appellees were aware that their actions violated clearly established law. This comprehensive presentation of facts alone should suffice to overcome a motion to dismiss under FRCP 12(b)(6). Furthermore, the district court failed to exercise its discretion regarding Dr. Jensen's request for leave to amend his First Amended Complaint, constituting an abuse of discretion. *Krainski*, 616 F.3d 963, 973 (citing *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1027 (9th Cir. 2000).

Granting sovereign immunity and qualified immunity in the presence of clear precedent poses a significant threat to the integrity of the judicial system. Chief Justice John Marshall warned of this type of case when he stated, "[t]he government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). Judge Hicks's order denied Dr. Jensen's vested legal rights and by doing so he abdicated his sworn oath to the Constitution. The order should be reversed and remanded in the strongest terms possible.

For the foregoing reasons, Dr. Jensen respectfully requests that the judgment of the district court be reversed and the case remanded for trial.

Date: February 19, 2024

> _/s/ John M. Nolan_
> John M. Nolan
> _Attorney of Record for Appellant_

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,876 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman 14-point font.

DATED: February 19, 2024

*/s/ John M. Nolan*
JOHN M. NOLAN
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

DATED: February 19, 2024

*/s/ John M. Nolan*
JOHN M. NOLAN
*Attorney for Appellant*