Case No. 23-2545
USDC No. 3:22-cv-00045-LRH-CLB

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

LARS JENSEN,

          Plaintiff – Appellant,

   v.

NATALIE BROWN, et al.,

          Defendants – Appellees.

_____/

On Appeal from the United States District Court

For the District of Nevada

---

**DEFENDANT-APPELLEES' RESPONSE
TO PLAINTIFF-APPELLANT'S OPENING BRIEF**

---

KIAH BEVERLY-GRAHAM
NV Bar No. 11916
General Counsel
Truckee Meadows Community College
2215 Raggio Parkway
Reno, Nevada 89512-1095
(775) 673-7300
(775) 673-7135 fax
kiah.beverly@dri.edu
*Attorney for Defendants-Appellees*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. v

DISCLOSURE STATEMENT ............................................................ 1

ISSUES PRESENTED........................................................................ 1

STATEMENT OF THE CASE............................................................ 1

   I.  RELEVANT FACTUAL ALLEGATIONS.................................... 1

      A.  Allegations Relevant to the First Amendment Clams ............................ 2

         1.  The Alleged Protected Speech ............................................. 2

         2.  Alleged Acts of First Amendment Retaliation .................... 6

         3.  First Amendment Rights Allegedly at Issue....................... 7

      B.  Allegations Concerning Due Process.................................... 7

      C.  Allegations Concerning Equal Protection............................. 10

      D.  Allegations Concerning Prospective Relief or Ongoing Harm and Violations................................................................. 11

   II.  RELEVANT PROCEDURAL BACKGROUND...................................... 15

SUMMARY OF THE ARGUMENT .................................................... 16

ARGUMENT ....................................................................................... 19

   I.  THE DISTRICT COURT CORRECTLY CONCLUDED THE FAC DOES NOT SEEK GENUINE PROSPECTIVE RELIEF AND CORRECTLY DISMISSED THE OFFICIAL CAPACITY CLAIMS ON THE BASIS OF SOVEREIGN IMMUNITY ............................................................. 19

      A.  Relevant Legal Framework.................................................... 19

B.  The FAC Does Not Seek Genuine Prospective Relief .......................... 21

  1.  The District Court Correctly Determined The FAC Fails to Allege Genuine Prospective Relief ................................................. 22

  2.  The FAC Does Not Plausibly Allege Any Ongoing Violation ......... 23

  3.  The Opening Brief Relies on Distinguishable Authority .................. 26

II.  THE DISTRICT COURT CORRECTLY CONCLUDED QUALIFIED IMMUNITY APPLIES BECAUSE THE FAC DOES NOT ALLEGE ANY CLEARLY ESTABLISHED RIGHT ................................................ 31

A.  Relevant Legal Framework ..................................................... 31

B.  Qualified Immunity Bars The FAC's First Amendment Claims Against Administrators In Their Personal Capacities ........................................ 32

  1.  The FAC Does Not Allege A Clearly Established First Amendment Right ................................................................. 32

  2.  Dr. Jensen's Reliance on *Demers* is Misplaced ................................. 32

    a.  The Conduct Alleged In The FAC Is Materially Distinguishable From That In *Demers*………………………………………………….35

    b.  Event if Not Distinguishable From the Instant Case, *Demers* Does Not Clearly Establish The Alleged Right ..................................... 37

    c.  Even if *Demers* Does Stand For A Clearly Established Right The FAC Does Not Plausibly Allege a Violation of That Right ......... 41

  3.  The Other Authorities Relied On By The Opening Brief Do Not Support A Clearly Established Federal or Constitutional Right ....... 43

C.  The District Court Correctly Dismissed the Due Process Claims For Failure to Establish a Constitutional Violation ..................................... 45

iii

D.  The District Court Correctly Dismissed the Equal Protection Claim for Failure to Allege A Constitutional Violation..........................................49

III.  THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DISMISSING THE FAC WITH PREJUDICE ..........................................50

IV.  THE COURT SHOULD DISREGARD THOSE PORTIONS OF THE OPENING BRIEF WHICH ENGAGE IN *AD HOMINEM* ATTACKS OR RAISE NEW ARGUMENTS ....................................................................52

A.  The Court Should Disregard the Brief's Repeated *Ad Hominem* Attacks Against the District Court, Counsel, And the Parties .............................52

B.  The Court Should Disregard Arguments Not Raised Below..................55

CONCLUSION .....................................................................................56

CERTIFICATE OF COMPLIANCE.......................................................57

# TABLE OF AUTHORITIES

## Cases

*Anthone v. N. Cent. Cntys. Consortium*,
  605 F.3d 740 (9th Cir. 2010) ................................................................39

*Armstrong v. Reynolds*,
  22 F.4th 1058 (9th Cir. 2022) ..............................................................46

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................21

*Bd. of Ed. v. Loudermill*,
  470 U.S. 532 (1985) ..............................................................................48

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................21

*Cochran v. Los Angeles*,
  222 F.3d 1195 (9th Cir. 2000) ..............................................................42

*Connick v. Myers*,
  461 U.S. 138 ..........................................................................................42

*Coomes v. Sch. Dist.*,
  816 F.3d 1255 (9th Cir. 2016) ..............................................................43

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013) (en banc) ..............................................43

*Demers v. Austin*,
  746 F.3d 402 (2014) ..........................................35, 36, 38, 39, 40, 42

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) .............................................32, 33, 35, 43, 44

*Edelman v. Jordan*,
  415 U.S. 651 (1974) ..............................................................................20

v

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009) ................................................... 37, 38, 39

*Ex parte Young*,
  209 U.S. 123 (1908).........................................................................20

*Flint v. Dennison*,
  488 F.3d 816 (9th Cir. 2007) .......................................................... 28, 30

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006).........................................................................38

*Gearhart v. Thorne*,
  768 F.2d 1072 (9th Cir. 1985) ...........................................................47

*Green v. Mansour*,
  474 U.S. 64 (1985)........................................................................ 21, 22

*Hatter v. L.A. City High School Dist.*,
  452 F.2d 673 (9th Cir. 1971) .......................................................... 28, 30

*K.J. v. Jackson*,
  22-cv-0244-DMS-DDL, 2023 WL 6378035 (S.D. Cal. Sep. 28, 2023 ...............30

*Krainski v. Nevada ex rel. Board of Regents of the Nevada System of Higher
  Education*,
  616 F.3d 963 (2010).................................................................... 19, 22

*Mendoza v. Strickler*,
  51 F.4th 346 (9th Cir. 2022) ...............................................................28

*Monteleone v. University of Ariz. Dean of Student's Office*,
  20-cv-00189, 2021 WL 120905 (D. Ariz. Jan. 11, 2021) ...................................29

*Murray v. Williams*,
  46 F.Supp.3d 1045 (D. Nev. 2014).........................................................40

*Murray v. Williams*,
  670 F. App'x 608, 609 (9th Cir. 2016)........................................... 40, 41

*Okwu v. McKim*,
    682 F.3d 841 (9th Cir. 2012) ..................................................................50

*Papasan v. Allain*,
    478 U.S. 265 ................................................................. 20, 22, 26

*Paul v David*,
    424 U.S. 693 ..................................................................47

*Pickering v. Bd. of Ed.*,
    391 U.S. 563 ..................................................................42

*Pool v. VanRheen*,
    297 F.3d 899 (2002)..................................................................42

*Portman v. County of Santa Clara*,
    995 F.2d 898 (9th Cir. 1993) ...................................................... 47, 48

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)..................................................................20

*R.W. v. Columbia Basin College*,
    77 F.4th 1225 (9th Cir. 2023 ..................................................................27

*Rankin v. McPherson*,
    483 U.S. 378 (1987)..................................................................41

*Richardson v. Bd. of Regents*,
    269 P.2d 265 (1954)...................................................... 41, 45

*T.L. v. Orange Unified School District*,
    No. 23-cv-01078-FWS-KES, 2024 WL 30538710 (C.D. Cal. Jan. 9, 2024).......28

*Thornton v. St. Helens*,
    425 F.3d 1158 (9th Cir. 2005) ..................................................................49

*Virginia Office for Protection and Advocacy v. Stewart*,
    563 U.S. 247 (2011)..................................................................29

*Winterberg v. University of Nevada Sys.*,
  513 P.2d 1248 (Nev. 1973).................................................................................9

**Statutes**

Nev. Rev. Statues 396.005, .020 ...........................................................................21

**Other Authorities**

Nevada System of Higher Education Handbook, Title 2, Chapter 5 § 5.13.2.....9, 13

Nevada System of Higher Education Handbook, Title 2, Chapter 6 § 6.9.4...........10

Nevada System of Higher Education Handbook, Title 2, Chapter 6 § 6.9.8...........25

Nevada System of Higher Education Handbook Chapter 6, Section § 6.11 ...........15

State Bar of Nevada Creed of Professionalism and Civility....................................54

**Rules**

F.R.C.P. 15 ....................................................................................... 15, 16

Nevada Rule of Professional Conduct 4.4 ..............................................................54

Nevada Rule of Professional Conduct 8.2 ..............................................................54

## DISCLOSURE STATEMENT

No Defendant-Appellee is a nongovernmental corporation.

## ISSUES PRESENTED

1.      Did the District Court err in dismissing the causes of action against Defendant-Appellees ("Administrators") in their official capacities on the basis of Eleventh Amendment Immunity?

2.      Did the District Court err in dismissing the causes of action against Administrators in their personal capacities on the basis of qualified immunity?

3.      Did the District Court abuse its discretion by dismissing the First Amended Complaint ("FAC") with prejudice?

## STATEMENT OF THE CASE

### I.      RELEVANT FACTUAL ALLEGATIONS

This appeal involves review of the District Court's decision to dismiss Dr. Jensen's First Amended Complaint (the "FAC"). Such a review is largely concerned with the allegations in the pleading, and a close review of those allegations is critical for the instant analysis.

The FAC was the operative pleading when the District Court dismissed the underlying action in full. The FAC asserts the following causes of action: (1) First Amendment Retaliation, against Official Capacity Defendants; (2) First

1

Amendment Retaliation, against Individual Capacity Defendants; (3) Violation of

Nevada Constitution, Art. 1, § 9 (Liberty of speech), against all Defendants; (4)

Violation Procedural Due Process Rights against Defendants Brown, Hilgersom,

and Flesher; (5) Violation of Nevada Constitution, Art. 1. § 8 (due process) against

Defendants Brown, Hilgersom, and Flesher; (6) Violation of Fourteenth

Amendment Equal Protection Clause against all Defendants; and (7) Declaratory

Relief. ER224-29.

### A.    <u>Allegations Relevant to the First Amendment Claims</u>

#### 1.   <u>The Alleged Protected Speech</u>

The FAC alleges four specific instances of expressive conduct for which

Administrators purportedly retaliated against Dr. Jensen. Most of the speech at

issue is Dr. Jensen's criticism of Truckee Meadows Community College's

("TMCC") plans for implementation of a new policy (the "Co-requisite Policy")

which was passed in June 2019 by the Board of Regents of the Nevada System of

Higher Education ("NSHE"). ER212, FAC ¶ 24. The Co-requisite Policy mandated

that NSHE institutions place certain students into college level courses while

requiring them to simultaneously take, if needed, lower-level courses as "co-

requisites" rather than taking them as "pre-requisites." *See* ER236, FAC Ex. A.

The FAC alleges that Dr. Jensen criticized the implementation of the Co-

requisite Policy on three occasions: (i) in a December 2019 email to TMCC's math

<div align="center">2</div>

department; (ii) at the January 2020 Math Summit; and (iii) in a February 2020 email to TMCC faculty. ER212-16, FAC ¶¶ 25, 35, 51. The FAC also alleges that Dr. Jensen sent an email in February 2018 to the TMCC faculty concerning "college policies and leadership" (together with the emails referred to above, the "Emails"). ER212, FAC ¶ 23.

The FAC has little to say about the Emails or how they connect to any alleged retaliation. Regarding Dr. Jensen's alleged expressive conduct, the FAC is almost entirely concerned with the events at the Math Summit. According to the FAC, Defendant-Appellee Dr. Ellsworth "organized a Math Summit at TMCC to discuss with the community how the [Co-requisite Policy] would be implemented . . ." ER212, FAC ¶ 26. As alleged, the Math Summit was to take place during a specific time and follow a specific agenda, the first item of which was a discussion of implementation of the new policy. *Id*., FAC ¶¶ 26-27.

The FAC pleads very carefully around whether the Math Summit was open to the public. It alleges Dr. Ellsworth, organized the summit to discuss policy implementation with "the community[.]" ER212, FAC ¶ 26. It also alleges the meeting followed an agenda. *Id.*, FAC ¶ 27. The FAC contains no direct allegation as to whether or not the event was public.

However, the agenda for the Math Summit, which is incorporated by reference into the FAC, sheds additional light. A document on the record entitled

3

"Math Summit Agenda" was attached to Dr. Jensen's Opposition to the Motion to Dismiss and appears to be the incorporated document referred to in the FAC. ER56-59. It is plain from a review of the agenda that the Math Summit was not a public event and was organized for the purpose of implementation of a new policy, not debate over its merits.

The first page of the document shows that the Math Summit required preregistration because it was a professional development event. ER57 ("Pre-register for the session on the January calendar prodev.tmcc.edu"). It states the purpose of the Math Summit was "sharing planned course and curriculum changes across the Math Department and with members from the broader TMCC community . . ." *Id*. The summit included breakfast and lunch. *Id*. Later, the document indicates the Math Summit included an "ice breaker" and breakout sessions. ER59. All of these are features of an internal, professional development event. These points were made by Administrators on the record below and were not disputed by Dr. Jensen. ER78, Motion to Dismiss at 6:1-3.

The FAC is also vague about Dr. Ellsworth's professional relationship with Dr. Jensen. It alleges that she counseled him on his grading policies, authored a letter of reprimand concerning his conduct, and evaluated him in his 2020 review. ER 216, FAC ¶¶ 53-56. It is clearly inferable from these allegations that Dr. Ellsworth was Dr. Jensen's direct supervisor at the time of the Math Summit. This

4

point was also made on record below and was not disputed. ER78, Motion to Dismiss at 6:4-8.

During the Math Summit's lunch break "Dr. Ellsworth took *questions* from the audience." ER212, FAC ¶ 28 (emphasis added). According to Dr. Jensen, he raised his hand – not to ask a question about implementation, the topic of the day, but rather to a make an apparently critical comment regarding what a "look under the hood" of the policy would reveal. ER213, FAC ¶ 31.

According to the FAC, Dr. Ellsworth "cut off his comment and ended the question-and-answer session" in favor of taking a break, stating that "Dr. Jensen could not comment because the event was out of time[.]" *Id*. ¶¶ 31-32. When "Dr. Jensen again requested to speak . . . Dr. Ellsworth refused to allow him to speak a second time and then directed Dr. Jensen to use the 'parking lot' for his comment." *Id*. ¶ 33.

The FAC does not define the "parking lot", but it is described in the written reprimand (the "Reprimand") that is incorporated into the FAC as a basis for Dr. Jensen's claims. *See* ER217, FAC ¶ 60 (alleging Reprimand was in retaliation for protected speech). The "parking lot" was a whiteboard in the room provided for Math Summit participants to post comments. ER99-100.

Rather than follow his direct supervisors instruction to post his comment on the parking lot (essentially an instruction to stay on topic per the stated purpose of

the meeting), Dr. Jensen instead handed out the document, including in different rooms that apparently were being used as breakout rooms by some Math Summit participants. ER213-14, FAC ¶¶ 33-34, 38. Dr. Ellsworth indicated to Dr. Jensen that he should stop by physically picking up copies and motioning for those passed out to be returned. ER214, FAC ¶ 40. Dr. Jensen apparently disregarded her implied instruction, and Dr. Ellsworth then again "denied" his efforts to pass out the document, which instruction he again disregarded. *Id*. FAC ¶ 41. Dr. Ellsworth then took Dr. Jensen aside and criticized his conduct as "disruptive", "bully[ing]", and defiant of her role as the organizer of the workshop. ER215, FAC ¶ 44.

### 2. Alleged Acts of First Amendment Retaliation

One set of expressive communication alleged by the FAC is the Emails. *See supra* at 2-3. Generally, the FAC is silent as to any nexus between the Emails and Defendants' purported retaliation. Rather, the FAC makes a series of vague and conclusory allegations that each of the Defendants "retaliate[d] against [him] for exercising his constitutionally protected rights to speak on matters of public concern." *E.g.*, ER 217-25, FAC ¶¶ 60, 65, 84, 104, 109, 112.

The FAC's only allegations that tie specific expressive conduct to particular acts of alleged retaliation relate to Dr. Jensen's conduct at the Math Summit. *See* ER 220, FAC ¶¶ 84-85. According to Dr. Jensen, following the Math Summit Administrators purportedly retaliated against him for his conduct there as follows:

(i) Dr. Ellsworth issued a letter of reprimand; (ii) Dr. Ellsworth rated him as "Unsatisfactory" on his 2020 annual evaluation; and (iii) after the receipt of a second consecutive "Unsatisfactory" on his 2021 annual evaluation, given by his subsequent supervisor Defendant-Appellee Dean Flesher, TMCC commenced non-discretionary disciplinary proceedings against Dr. Jensen as required by NSHE regulations (the "Termination Proceedings"). ER215-20, FAC ¶¶ 46-47, 53, 56, 63, 68-83. The basis for the second unsatisfactory is not alleged.

### 3. First Amendment Rights Allegedly at Issue

The FAC contains many vague, general references to First Amendment rights and academic freedom. ER207-224, FAC ¶¶ 1, 12-17, 50, 55, 57, 62, 65-66, 84, 87-88, 97, 98, 102, 104. Despite the numerosity, there is generally no detail about what specific factual allegations give rise to the rights purportedly at issue.

Though still vague, the FAC is slightly more specific in a few instances, alleging Dr. Jensen, as an academic employee at an institution of higher education, had a general right, seemingly without limitation or regard to context, to speak at work on matters of public concern. ER208-225, FAC ¶¶ 5, 49, 60, 92, 96, 109.

### B. Allegations Concerning Due Process

With respect to Dr. Jensen's due process claim, the FAC alleges that in and around June 2021, TMCC commenced the Termination Proceedings because Dr. Jensen received two consecutive unsatisfactory ratings in his annual reviews. ER217-18, FAC ¶¶ 67-70. As alleged, this process was pursuant to NSHE's

internal procedures. *Id*. According to the FAC, Defendants' handling of the Termination Proceedings violated Dr. Jensen's procedural due process rights. ER218-27, FAC ¶¶ 68-94, 118-130.

Dr. Brown allegedly violated Dr. Jensen's due process rights during her investigation of his alleged misconduct because she (i) had no authority to investigate due to the purported absence of a "complaint"; (ii) conducted her investigation over the summer when Dr. Jensen was not teaching; (iii) interviewed only Dr. Ellsworth and Dean Flesher; (iv) declined to delay the proceedings; (v) listed additional charges which she did not have authority to investigate in her Charging Letter; and (vi) "fabricated" a basis to terminate Dr. Jensen. ER218-19, FAC ¶¶ 70-76.

President Hilgersom allegedly violated Dr. Jensen's due process rights by (i) appointing her supposed "former colleague . . . as the Special Hearing Officer", though she removed him once the potential conflict was brought to her attention; (ii) "preventing", in some unexplained way, a challenge to the very special hearing officer the FAC alleges President Hilgersom removed; and (iii) refusing to order removal of a supposedly biased member of the faculty committee (essentially an advisory "jury" of faculty) that was also involved in the Termination Proceedings, notwithstanding the fact the proceedings did not result in his loss of employment. ER219-20, FAC ¶¶ 77-81.

Someone "denied" in some unexplained fashion Dr. Jensen a subpoena for witnesses and documents. ER220, FAC ¶¶ 82-83. The FAC alleges that Dr. Jensen was "entitled to reasonable notice and a meaningful opportunity to be heard" (ER226, FAC ¶ 121), but it does not allege Dr. Jensen was denied those rights. Rather, it alleges the Termination Proceedings were conducted pursuant to NSHE Handbook, Title 2, Chapter 5 § 5.13.2. ER218, FAC ¶ 70. Among other things, this section of the Handbook requires that when an NSHE faculty member, such as Dr. Jensen, receives "unsatisfactory" ratings in two consecutive years, a hearing shall be held to determine if the faculty "should be retained in employment." ER108, NSHE Handbook § 5.13.2(a).[1] That hearing is to be conducted under Section 6.11 of the NSHE Handbook and all other provisions of Chapter 6 of the Handbook "should be followed to the extent applicable[.]" *Id*. § 5.13.2(b).

Handbook Section 6.11, contains numerous procedural safeguards in Dr. Jensen's favor including the right to (i) a neutral hearing officer, licensed to practice law, who finds facts (6.11.1(b), 6.11.2); (ii) challenge the officer for cause (6.11.1(c)); (iii) a "special hearing committee" of faculty members who hear evidence and make a recommendation to the president as to whether or not to

---

[1] Relevant sections of the NSHE Handbook are included in Appellant's Excerpts of the Record. D.E. 12.1, ER107-120. The NSHE Handbook, or Code, is given the force of statute by Nevada courts. *See Winterberg v. University of Nevada Sys.*, 513 P.2d 1248, 1251 (Nev. 1973).

9

dismiss the faculty member (6.11.4); (iv) challenge the special committee members for cause and peremptorily (6.11.6); (v) a hearing; and (vii) to appeal the hearing's outcome. ER115-120. Other provisions of Chapter 6 applicable to this hearing process include protections, such as (i) a minimum of ten calendar days' notice before the hearing, which notice must specify the misconduct charged (6.9.3); (ii) right to counsel (6.9.3(a)(4) and 6.9.6); (iii) the right to examine, at least five days' prior to the hearing, all documentary evidence to be presented (6.9.4); (iv) the faculty member's right to "present, challenge or rebut evidence and to question or cross-examine witnesses" (6.9.4); the right to have issued subpoenas for witnesses or documents (6.9.11); and a "preponderance of the evidence" standard of proof (6.9.14). ER111-114.

With respect to these safeguards, the FAC alleges only that Dr. Jensen was not issued a requested subpoena. ER220, FAC ¶ 83. There is no allegation as to how that affected his due process rights in a hearing he won; nor is there any allegation Administrators did not provide all documents they used at the hearing as required by NSHE Handbook Section 6.9.4. *See* ER112.

### C. <u>Allegations Concerning Equal Protection</u>

The FAC alleges Administrators subjected Dr. Jensen to various adverse actions and in so doing treated Dr. Jensen differently than similarly-situated professors. ER228, FAC ¶ 142. Though no protected class to which Dr. Jensen

10

belongs is identified, the FAC goes on to assert that Defendants have discriminated

against him. ER229, FAC ¶ 143.

### D. <u>Allegations Regarding Prospective Relief Or Ongoing Violations</u>

Critical to the resolution of whether or not Administrators are entitled to

complete sovereign immunity is whether the FAC seeks genuine prospective relief.

For that reason, it is necessary to survey the FAC's allegations, express or implied,

on this topic. In two instances, the FAC alleges that Dr. Jensen seeks "prospective

relief":

> 105. Dr. Jensen seeks prospective relief against the defendants acting in their official capacities for full expungement of all negative personal files, return of his 2019-2020 annual performance evaluation to "excellent", and return of his 2020-2021 annual performance evaluation to "excellent."

> 106. Dr. Jensen is also entitled to relief from defendants for prospective compensation from the date of judgment for salary adjustments he would have received had he not received the unlawful performance reviews.

ER224, FAC ¶¶ 105-106.

The first allegation on this point describes the prospective relief sought as

expungement of "negative personal" files and the restoration of "excellent" ratings

in two annual performance evaluations. *Id*. In its Prayer for Relief, the FAC

appears to list the personnel files that Dr. Jensen seeks to have expunged as

follows: (a) March 30, 2020 letter of reprimand; (b) January 30, 2020 letter;

(c) materials related to disciplinary investigation; (d) negative comments on 2019-

2020 evaluation; (e) negative comments on 2020-2021 evaluation; (f) September 27, 2021 letter; (g) September 24, 2021 letter; (h) September 1, 2021 letter; (i) April 30, 2020 letter; (j) December 21, 2020 letter; (k) November 24, 2020 letter; (l) September 3, 2020 letter; and (m) July 27, 2021 letter. ER 230-32.

As to what, if any, ongoing violation these documents represent, or what harm they continue to cause, the FAC has little to say. Several of the documents listed in the requested relief are not referred to at all in the FAC's allegations. Those are the documents listed in the foregoing paragraph as (f), (g), (h), (i), (j), and (l).

Items (a) and (b) on the list are two letters of reprimand. ER215-16, FAC ¶¶ 46-47, 53. The FAC alleges a letter of reprimand has caused "long-term effects" such as "stress, and psychological trauma." ER208 FAC ¶ 5. The FAC also alleges, without detail, that due to an unspecified letter of reprimand "Dr. Jensen has been prevented from receiving employment benefits and other opportunities." ER221, FAC ¶¶ 90-91.

Item (c) on the list of documents sought to be expunged is material that relates to Dr. Brown's investigation. This is the investigation which, according to the FAC, led to the Termination Hearing at which Dr. Jensen prevailed. ER218-20, FAC ¶¶ 68-82. In sum, the FAC alleges an investigation occurred and Dr. Jensen believes it was conducted in a manner unfair to him. *Id*. The FAC does not allege

12

how an unspecified set of documents referred to in an investigation, which ultimately did not lead to any adverse action, constitute an ongoing violation.

Items (d) and (e) on the list are historical performance evaluations. As with the letter of reprimand, the FAC vaguely alleges these evaluations have caused unspecified stress and psychological harm, but no supporting details are alleged. ER207-08, FAC ¶¶ 3, 5. The FAC also alleges that negative evaluations caused Dr. Jensen to suffer "adverse employment actions", which presumably refers to the disciplinary hearing triggered by those evaluations. ER218-21, FAC ¶¶67-68, 90. No ongoing adverse employment action is alleged and it is unclear what ongoing violation is associated with prevailing at a disciplinary proceeding. The FAC also alleges evaluations caused reputational harm, without providing any additional detail. ER217, FAC ¶ 59.

In one instance the FAC hints at monetary harm when it alleges that one negative evaluation negatively impacted future merit pay. ER217, FAC ¶ 59. The FAC contains no allegations as to how merit pay works or that this evaluation caused a loss in pay. The FAC also ignores that the NSHE Handbook required TMCC to award Dr. Jensen a higher rating on the evaluations in question because he prevailed at his hearing. *See* ER108, NSHE Handbook § 5.13.2(b) (if faculty prevails, "the annual performance evaluations which initiated the hearing shall be revised to eliminate the unsatisfactory ratings"). Nowhere does the FAC allege

13

Administrator's failed to perform this obligation or that Dr. Jensen is owed back merit pay. Such would be monetary, not injunctive, relief in any case.

Items (l) and (m) on the list of documents requested for expungement are letters from Defendant-Appellee Rose denying various grievances. According to the FAC, Dr. Jensen filed five grievances related to the "adverse employment actions taken against him" by Deans Ellsworth and Flesher "for exercising his First Amendment rights." ER216-17, FAC ¶¶ 57, 65. It also alleges that all of these grievances were denied. ER217-18, FAC ¶¶ 58, 66. There is no allegation that explains how Chancellor Rose's decision continues to violate any right or was otherwise wrongful, other than the conclusory allegation that a grievance "was not seriously considered[.]" ER217, FAC ¶ 65.

Though not connected to the documents sought to be expunged, the FAC does contain several conclusory allegations of continuing retaliation or harm. Generally these are boilerplate assertions that a particular defendant "condoned the continuing retaliation against Dr. Jensen for the exercise of his free speech rights." ER209-11, FAC ¶¶ 12, 14-17. Elsewhere the FAC makes a conclusory allegation of continuing harm, without any detail or nexus to the personnel files at issue alleged. ER229, FAC ¶144. It is not clear from these allegations what the alleged "continuing" conduct is or if it occurred during the historical period described in the FAC or was ongoing as of the date the FAC was filed.

14

Another reference to continuing conduct in the FAC is the allegation that Dr. Ellsworth sent Dr. Jensen two emails asserting his course polices were "punitive". ER216, FAC ¶ 55. The FAC alleges these emails "can only be viewed as continuing retaliation" but there is no indication as to what ongoing harm flows from these historical letters. These two letters are not included in the list of items that Dr. Jensen requests be removed from his personnel file.

The FAC contains two other references to alleged continuing harm. It asserts that Dr. Jensen "will continue to be forced to tell other employers about the disciplinary hearing, as well as family and friends." ER226-28, FAC ¶¶ 125, 135. Yet the FAC does not allege the identity of a single prospective employer to which Dr. Jensen has applied nor does it allege that any employer has denied him employment on the basis of the existence of any the documents he seeks to have expunged. Nor does the FAC identify the friends and family to whom Dr. Jensen was "forced" to disclose the matter or how that relates to any ongoing violation caused by the documents he seeks to expunge.

## II.   **RELEVANT PROCEDURAL BACKGROUND**

On March 15, 2022, Administrators filed their Motion to Dismiss the FAC, which Dr. Jensen opposed. ER26-120. After briefing on the motion was fully submitted, Dr. Jensen filed a Motion to Amend his opposition briefing papers, relying on Fed. R. Civ. Pro. 15(a)(2), which provides a procedure for amendment

of pleadings. ER266, Motion to Amend Briefing at 3:11-25. This motion sought to add unpled "new facts" to the record, while a dispositive motion was pending. ER 267, Motion to Amend Briefing at 4:2-3.

Administrators opposed, pointing out numerous authorities that stand for the proposition that the facts in pleadings cannot be supplemented through motion papers and that F.R.C.P. 15 permits amendment of pleadings, not briefing. ER276-78, Opposition to Motion to Amend Motion Papers at 1:20-3:15. Administrators' papers put Dr. Jensen on notice that the correct way to add new allegations was by amending the complaint through a Rule 15 motion, not by amending motion papers. ER278, Opposition to Motion to Amend Motion Papers at 3:2-17.

In Reply, Dr. Jensen conceded that Rule 15 did not apply to briefing papers. Instead of withdrawing the motion and seeking leave to amend the pleading, he doubled-down on his procedurally improper request, urging the Court to consider the unpled facts anyway. ER281, Reply In Support of Motion to Amend Motion Papers at 2:11-3:19. Ultimately, the District Court correctly denied the Motion to Amend. ER25, Order at 20:19.

## SUMMARY OF THE ARGUMENT

Dr. Jensen asserts claims for First Amendment retaliation and violation of Constitutional Due Process and Equal Protection, as well the Nevada state equivalents of the foregoing. The FAC is premised largely on sweeping and

16

conclusory allegations of misconduct. It alleges purported wrongdoing in detail only with respect to the First Amendment retaliation claims. Those are premised almost exclusively on the events at TMCC's Math Summit.

The events of the Math Summit are detailed by Dr. Jensen's own verified allegations and incorporated documents. *See supra* at 3-6. In sum, Dr. Jensen's direct supervisor called a work meeting, explicitly for the purpose of informing TMCC employees of the implementation plan for a new mandate from the NSHE's governing Board of Regents. Dr. Jensen attempted to speak off-topic at that meeting, which his supervisor did not allow, directing him to post his comments instead, an immediately available alternative means to communicate his message. Dr. Jensen refused to follow his supervisor's instructions, instead handing out his document directly, despite his supervisor's repeated direction to stop. This manifestly undermining and disrespectful conduct appears to have occurred in a room full of the supervisor's colleagues and other reports. Dr. Jensen was subsequently disciplined and the underlying litigation resulted.

The District Court correctly dismissed the FAC, in full, for two principal reasons. First, the Court concluded that all Administrators, to the extent they are named in their official capacities, are protected by Eleventh Amendment Sovereign Immunity. Second, the Court dismissed all claims against the Administrators in

17

their personal capacities because they are protected by the doctrine of qualified immunity. This dismissal was with prejudice.

Dr. Jensen contests the District Court's conclusion that sovereign immunity is not applicable because he does seek genuine seek prospective injunctive relief. The District Court did not err in this conclusion. It is well-settled that whether relief is properly characterized as prospective or not depends on the substance of the relief, not the labels attached to it. Here, the requested relief relates entirely to historical wrongs that do not represent ongoing violations. Much of what is requested is better addressed through money damages. Other than vague and conclusory assertions, the FAC is silent as to the nature of ongoing violations and how the relief requested will remedy them.

Dr. Jensen also contests the District Court's conclusion that qualified immunity applies because the FAC fails to put a clearly-established federal right at issue. In this regard, the FAC again focuses on sweeping statements and generic principals, rather than identifying a specific right, particular to the context in which Administrator's acted, that should have been know to them.

Dr. Jensen also takes issue with the Court's decision to dismiss the FAC with prejudice. That determination was within the Court's discretion, primarily because nothing in the Opening Brief suggests an amendment that would remedy the FAC's shortcomings. Moreover, as explained below, Dr. Jensen had over year

of notice of the shortcomings in the FAC, and even attempted to interject new facts into the record through a procedurally improper request to amend the motion papers. Despite a year's notice of the impropriety of the means of that request, and the clear need to seek leave to amend the pleading itself. Dr. Jensen took no steps to amend his pleading.

Finally, Administrators must note that the Opening Brief contains numerous and lengthy *ad hominem* attacks on the District Court, the Administrators, and counsel. This material was not pled and is not supported by anything on the record. These unfounded accusations of serious wrongdoing are in tension with Nevada's Rules of Professional Conduct. Baseless attacks on the integrity and competence of public servants have no place in this forum and should be disregarded.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY CONCLUDED THE FAC DOES NOT SEEK GENUINE PROSPECTIVE RELIEF AND CORRECTLY DISMISSED THE OFFICIAL CAPACITY CLAIMS ON THE BASIS OF SOVEREIGN IMMUNITY

#### A. Relevant Legal Framework

"The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Krainski v. Nevada ex rel. Board of Regents of the Nevada System of Higher Education*, 616 F.3d 963, 967 (9th Cir. 2010) (citing ref's and internal quotations omitted). This immunity extends to NSHE and its member institutions, which are "agencies and

19

instrumentalities of the State of Nevada within the meaning of the Eleventh Amendment." *Id*. at 968 (citing ref's omitted). Eleventh Amendment immunity also shields state officials from official capacity lawsuits. *Id.* at 967.

The Supreme Court established an exception to this immunity in *Ex parte Young*, 209 U.S. 123 (1908). This "narrow" exception applies only when a pleading seeks prospective relief, meaning it sufficiently alleges "a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . ." *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993) (citing ref's omitted) (holding *Young* exception is "narrow"); *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).

In considering whether a pleading seeks prospective relief, Courts should "look to the substance rather than to the form of the relief sought." *See Papasan*, 478 U.S. at 279. Merely labelling relief as equitable is not sufficient to trigger the *Young* exception, in particular when the relief in practice resembles a money judgment. *See Edelman v. Jordan*, 415 U.S. 651, 666 (1974). Relief is not truly prospective when "it is in practical effect indistinguishable in many aspects from an award of damages" including because "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *See Edelman*, 415 U.S. at 668.

Where the pleading does not present a genuine claim for prospective relief, dismissal based on Eleventh Amendment immunity is appropriate. *See Green v. Mansour*, 474 U.S. 64, 71-73 (1985) (affirming dismissal where "there is no continuing violation of federal law to enjoin" and crux of dispute was really "about the lawfulness of respondent's past actions").

As with any other allegations, labels, conclusions, and formulaic recitations are not entitled to an assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### B. <u>The FAC Does Not Seek Genuine Prospective Relief</u>

Administrators, all sued in their official capacity, are either current or former employees of NSHE. ER209-211, FAC ¶¶ 12-17 (party allegations). At all relevant times, all but one worked at TMCC, a member institution of NSHE. *Id*.; Nev. Rev. Statues 396.005, .020 (defining NSHE as the "System" and the "System" as including Nevada's community colleges). Defendant-Appellee Melody Rose worked for NSHE as Chancellor. ER211, FAC ¶ 17.

As NSHE employees Eleventh Amendment immunity applies to all the Administrators, by default barring suit against them to the extent that they were

sued in their official capacities. *See Krainski*, 616 F.3d at 967. Accordingly, the

District Court correctly dismissed the claims against Administrators in their

official capacities, unless the FAC can be said to allege an entitlement to genuine

prospective relief. *See Green*, 474 U.S. at 71 (affirming dismissal where "there is

no continuing violation of federal law to enjoin" and crux of dispute was really

"about the lawfulness of respondent's past actions").

     1.  The District Court Correctly Determined The FAC Fails to
Allege Genuine Prospective Relief

The District Court correctly stated that the FAC contains only two

allegations about "prospective relief." ER14, Order at 9:9-12. Those are as follows:

> 105. Dr. Jensen seeks prospective relief against the
> defendants acting in their official capacities for full
> expungement of all negative personal files, return of his
> 2019-2020 annual performance evaluation to "excellent",
> and return of his 2020-2021 annual performance
> evaluation to "excellent."
> 106. Dr. Jensen is also entitled to relief from defendants
> for prospective compensation from the date of judgment
> for salary adjustments he would have received had he not
> received the unlawful performance reviews.

ER224, FAC ¶¶ 105-06.

With respect to the alleged prospective relief in the form of "prospective

compensation", such is plainly not the sort of prospective injunctive relief for

which *Young* makes an exception to sovereign immunity. Rather an award of

"compensation" is exactly what the Supreme Court has held does not constitute

prospective relief for these purposes. *See, e.g., Papasan*, 478 U.S. at 278 (holding a

22

litigant's interest in "compensation" is "insufficient to overcome the dictates of the Eleventh Amendment"). Accordingly, the District Court did not err in concluding that monetary compensation for lost salary is properly characterized as recovery of lost wages. ER14, Order at 9:11-13.

The second category of alleged prospective relief is the expungement of personnel files. ER224, FAC ¶ 105. The records sought to be expunged are listed in the FAC's Prayer for Relief. *See supra* at 11-12. The District Court again accurately concluded that allegations related to this requested relief more closely resembled lost wage than true prospective relief addressing ongoing violations, noting that merely labeling the allegations as "prospective" was not sufficient. ER14, Order at 9:9-16.

Understanding why the District Court's analysis was correct requires considering the FAC's allegations about ongoing violations and harms purportedly suffered by Dr. Jensen and how, if at all, the requested expungement would alleviate such.

### 2. The FAC Does Not Plausibly Allege Any Ongoing Violations

The nature of any allegedly ongoing violations or harm associated with the documents in Dr. Jensen's personnel file is generally vague. The FAC alleges continuing harm in the form of (1) long-term effects of stress and psychological trauma related to letters of reprimand and negative evaluations (ER208-228, FAC

¶¶ 5, 94, 130, 139); (2) reputational or future employment harm because Dr. Jensen "will continue to be forced to tell other employers about the disciplinary hearing, as well as family and friends" (ER226-228, FAC ¶¶ 125, 130, 135, 139); (3) prevention of receipt of employment benefits and other opportunities (ER221, FAC ¶¶90-91); and (4) unspecified "continuing retaliation" and a "pattern of actions" (ER 209-211, 220, FAC ¶¶ 12, 14-17, 85).

The FAC does not plausibly allege any ongoing violation that ties to the documents sought to be expunged or that illustrates how expunging those documents will alleviate any ongoing or prospective harm that is not monetary.

First, with respect to the alleged stress and psychological harm, the FAC contains nothing beyond a few conclusory allegations. ER208-228, FAC ¶¶ 5, 94, 130, 139. None identify the specific nature of the harm, how it is caused by an ongoing violation, or how the removal of the files will alleviate such.

Second, regarding the alleged reputational or future employment harm, the FAC's allegations are too vague to be plausible. For example, the pleading vaguely asserts that Dr. Jensen "has been and will continue to be forced to tell other employers about the disciplinary hearing, as well as family and friends" ER226-228, FAC ¶¶ 125, 135. Yet the FAC does not identify a single prospective employer, friend, or family member to whom disclosure of any negative information was "forced." Nor does it allege any potential employment that was

24

not obtained because of the existence of the personnel files. The FAC also does not explain why the presence of confidential personnel file "forces" the disclosure by Dr. Jensen. Nor does it explain why money damages would not be the appropriate remedy for lost job opportunities.

The FAC also fails to explain, plausibly or otherwise, how removing these items from Dr. Jensen's file will ameliorate any ongoing reputational harm, in particular why his victory in the underlying termination proceeding has not already accomplished this end.

In addition, the FAC fails to plausibly allege any action by Administrators' that resulted in this type of reputational harm. Logically, such would be caused by disclosure of the matter. NSHE's hearing process is confidential and closed, unless the employee opts to make it public. *E.g.* ER113, NSHE Handbook § 6.9.8. The FAC fails to allege what action by the Administrators led to harm through publicity, despite this confidentiality. It also fails to allege that Administrators themselves disclosed the matter to any party. What the FAC does clearly imply is that Dr. Jensen himself repeatedly broadcast these matters, including to the media and various trade groups. *See* ER208, FAC ¶ 4. The Opening Brief seemingly confirms this, referring to Dr. Jensen recruiting "outside organizations" to his cause. Opening Brief at 22.

<u>Third</u>, the FAC alleges harm in the form of lost employment benefits and other opportunities at TMCC, his present employer. ER221, FAC ¶¶90-91. On the face, these allegations suggest monetary harm. The FAC is generally silent on the nature of these allegedly lost benefits, how the continued presence of the personnel files at issue relates to that purported harm, and how it will be corrected by the relief requested. In one instance, the FAC alleges that one annual performance evaluation "negatively impacted . . . future merit pay", further suggesting any injury in this regard is better characterized as monetary. ER217, FAC ¶ 59.

<u>Fourth</u>, the FAC's allegations of ongoing retaliation are entirely conclusory and without any supporting detail. It is not even clear if these issues are alleged to be ongoing over the period of time covered by the FAC or if they are allegedly being suffered on an open-ended basis caused by the content of the files. Nothing in the FAC plausibly supports allegations of ongoing violations, such that any genuine prospective injunction relief is available. Simply reciting the words is not sufficient. *See Papasan*, 478 U.S. at 279 ("substance rather than [] the form of the relief sought" controls this analysis).

### 3. The Opening Brief Relies On Distinguishable Authority

The Opening Brief's argument on the prospective relief question is largely focused on a string of case comparisons. Opening Brief at 16-17. These cases are almost entirely distinguishable for one reason: they generally involve a court

concluding that a plaintiff seeks prospective relief, and thereby avoids Eleventh Amendment immunity, because the prospective relief will alleviate a clearly identifiable ongoing violation that is separate from the existence of a record which the plaintiff also seeks to have expunged. Unlike these cases, the FAC does not plausibly connect the existence of the personnel files to any such independent ongoing violation.

This Court's decision in *R.W. v. Columbia Basin College*, 77 F.4th 1214 (9th Cir. 2023), upon which the Opening Brief relies, provides an example of this distinguishing feature. In that case plaintiff was a student who sued his college seeking, among other things, reinstatement into a program from which he had been permanently removed, as well as "expungement" of failing grades. *Id*. at 1217. In addressing the question of whether state official defendants were protected by Eleventh Amendment immunity under *Young*, the Court noted the inquiry was "into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. at 1225. The Court concluded the plaintiff genuinely requested prospective relief in that he sought an injunction against future enforcement of sanctions as well as reinstatement to the program at issue and expungement of failing grades. *Id*. at 1226. Importantly, the Court noted the sanction at issue was, effectively, an expulsion from the program. *Id*. In

27

reaching that conclusion, the Court held that "reinstatement is a form of prospective injunctive relief." *Id*. (citing ref omitted).

The harm suggested by the FAC is very different. The equivalent of "reinstatement" in this context would be if Dr. Jensen were to seek an injunction that reversed termination of employment. However, as the FAC indicates, Dr. Jensen was never terminated nor does he plausibly allege any similar ongoing violation that the requested relief would remedy. ER209, FAC ¶ 9.

Most of the authorities Dr. Jensen relies upon on this point are distinguishable for similar reasons. *See Mendoza v. Strickler*, 51 F.4th 346, 352-53 (9th Cir. 2022) (finding prospective relief adequately alleged where plaintiff suffered ongoing suspension of driver's license due to alleged unconstitutional acts); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (holding expungement of student discipline record was prospective because the injunction would "prevent[] present and future harm" *only after* concluding the negative information in the records "may jeopardize the student's employment or college career"); *Hatter v. L.A. City High School Dist.*, 452 F.2d 673, 674 (9th Cir. 1971) (rejecting mootness argument because unexpunged disciplinary records "threaten prejudice with respect to college admission and future employment"); *T.L. v. Orange Unified School District*, No. 23-cv-01078-FWS-KES, 2024 WL 305387, at * 10 (C.D. Cal. Jan. 9, 2024) (concluding plaintiff adequately alleged prospective

28

injunctive relief where pleading alleged "Defendants continue to violate federal law by preventing Plaintiff from returning to [] high school. . ."); Report and Recommendation in *Monteleone v. University of Ariz. Dean of Student's Office*, 20-cv-00189, 2021 WL 120905, at *2 (D. Ariz. Jan. 11, 2021) (suspended student sought expungement of record and reinstatement).

The Opening Brief's reliance on *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011), is also misplaced. In that case the plaintiff was a state agency tasked with protecting and advocating for persons with developmental disabilities. *Id*. at 250. In connection with an investigation within its mandate, plaintiff requested medical records from a state-run hospital and was denied those records. *Id*. at 252. The Supreme Court ultimately agreed with plaintiff that Sovereign Immunity did not shield the hospital from plaintiff's request for an injunction compelling the record disclosure. The ongoing violation was the inability to access the records to which plaintiff was entitled. *Id*. at 255-56 (holding injunction sought production of records which would abate violation). Nothing in *Stewart* relates to expungement of records. And, the plaintiff's inability to obtain records clearly impaired its ability to investigate matters within its mandate, plainly causing ongoing harm to those the agency was meant to protect. *Stewart* is an example of clear ongoing harm that would be redressed by the

29

requested injunction. In contrast, the FAC fails to connect the files it seeks to have expunged to the remediation of ongoing harm.

The Opening Brief cites only one case that appears to stand for the proposition that the expungement of records alone, without express reference to any other ongoing harm, can qualify as prospective relief within *Young*. *See K.J. v. Jackson*, 22-cv-0244-DMS-DDL, 2023 WL 6378035, at *6 (S.D. Cal. Sep. 28, 2023). The District Court in *Jackson* did not analyze why it concluded the requested expungement would address an ongoing violation. However, that decision also involved a high school disciplinary record. *Id*. at *1. And it issued from a District Court within this Circuit, where at least two decisions from this Court appear to recognize as self-evident the proposition that unexpunged discipline threatens unique prejudice to high school students with respect to college admission and future employment. *See Flint*, 488 F.3d at 824; *Hatter*, 452 F.2d at 674.

Unlike the case of a high school student, there is no self-evident educational or career harm inherent in the existence of the records at issue. Dr. Jensen has already obtained a terminal degree and there is no allegation on the record that any future educational opportunities have been harmed. ER 209, FAC ¶ 10 (stating Dr. Jensen obtained a Ph.D. in 1984). And, unlike a high school student, it is not self-evident that Dr. Jensen will necessarily seek future employment. He alleges that he

has been, and continues to be, employed at TMCC since 1996 (with tenure since 1999). *Id.* ¶ 9. There is not a single allegation that plausibly suggests Dr. Jensen is actively seeking new employment or that the records at issue are preventing such an effort. None of the obvious, ongoing harms attendant with a negative high school disciplinary record are alleged to be present here.

## II. THE DISTRICT COURT CORRECTLY CONCLUDED QUALIFIED IMMUNITY APPLIES BECAUSE THE FAC DOES NOT ALLEGE ANY CLEARLY-ESTABLISHED RIGHT

### A. Relevant Legal Framework

> State employees sued in their personal capacities, such as Administrators, are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. . . . Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. . . . In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law . . . which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority . . . It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. . . . Otherwise, the rule is not one that every reasonable official would know. . . .
>
> The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the

31

particular circumstances before him. The rule's contours
must be so well defined that it is clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted. . . . This requires a high degree of specificity.
. . . We have repeatedly stressed that courts must not define
clearly established law at a high level of generality, since
doing so avoids the crucial question whether the official
acted reasonably in the particular circumstances that he or
she faced. . . . A rule is too general if the unlawfulness of
the officer's conduct does not follow immediately from
the conclusion that [the rule] was firmly established.

*District of Columbia v. Wesby*, 583 U.S. 48, 62-64 (2018) (internal quotation

marks and citing ref's omitted).

## B. Qualified Immunity Bars The FAC's First Amendment Claims Against Administrators In Their Personal Capacities

### 1. The FAC Does Not Allege A Clearly-Established First Amendment Right

The critical question is whether the law Administrators allegedly violated

was sufficiently clear, and its contours so well defined, that it should have been

clear to them that the alleged conduct was unlawful in the situation they

confronted. *See id*.

On review of the disposition of a motion to dismiss, this particularized

analysis necessarily focuses on the allegations in the complaint. Here, the FAC's

allegations as to the First Amendment right allegedly at issue are described at such

a "high level of generality" that a reasonable state official could not reasonably

32

know it applied to the "particular circumstances that he or she faced[.]" *Wesby*, 583 U.S. at 62-64.

Most of the FAC's allegations around the rights at issue refer to broadly-framed First Amendment and academic freedom principles. *See* ER207-224, FAC ¶¶ 1, 12-17, 50, 55, 57, 62, 65-66, 84, 87-88, 97, 98, 102, 104. In a few instances the FAC makes allegations about Dr. Jensen's right to speak on matters of public concern. ER208-225, FAC ¶¶ 5, 49, 60, 92, 96, 109. None of these generic allegations establishes a rule with a such a "high level of specificity" that it "clearly prohibit[ed] the [Administrators'] conduct in the particular circumstances before" them. *Wesby*, 583 U.S. at 62-64. A review of the conduct actually alleged in the FAC illustrates this.

The FAC's allegations are centered around Dr. Jensen's conduct at the Math Summit and the alleged retaliation thereafter. *See supra* at 3-6. What the FAC describes is a non-public work meeting, called by Dr. Jensen's supervisor, for the purpose of implementing a new policy mandated by TMCC's governing board. *See supra* at 3-6; ER56-59, Agenda; ER212, FAC ¶¶ 26-27. The FAC's vague allegation that the meeting was open to the "community" seems to suggest it was public. That conclusion can be set aside as implausible in light of the clear import from the allegations, as supported by incorporated documents, that this was not a meeting open to the public. *See supra* at 3-4.

As alleged, the purpose of the meeting was to discuss implementation of the new policy. ER212, FAC ¶¶ 26-27. Yet, the FAC tells us that Dr. Jensen desired to speak off-topic, not asking a question about policy implementation but offering criticism of the already-decided plan. ER213-14, FAC ¶¶ 30-37; ER235-36, FAC Ex. A. Though Dr. Jensen's comments were not on topic, Dr. Ellsworth nevertheless instructed him that he could express his views by posting them in the room for all to see. ER213, FAC ¶33. He ignored her direction, instead handing out his document directly to participants, repeatedly defying his supervisor's instruction, apparently in front of a room full of her colleagues and other reports. ER214-15, FAC ¶¶ 38-43.

Though it does not it explicitly frame it as such, the "clearly-established right" suggested by the FAC is as follows: the absolute right of a state employee, who may be described as an academic, to express himself, in the exact manner he desires, in any work context, without regard to whether that context is an internal meeting on a specific topic, whether the expression is on or off topic, or whether that expression is in defiance of a direct supervisor's instruction. This is the purported right Dr. Jensen actually seeks to vindicate.

Of course, no authority supports the existence of this "right" and it cannot possibly be said that such a rule is "so well defined" that it should have been clear to Administrators that imposing discipline in this particular context was unlawful.

34

*See Wesby*, 583 U.S. at 63 (holding precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply"). No authority in the Opening Brief, including this Court's decision in *Demers v. Austin*, 746 F.3d 402 (2014), supports the sweeping proposition urged by Dr. Jensen with the required clarity.

 2. Dr. Jensen's Reliance on *Demers* is Misplaced

  a. The Conduct Alleged In The FAC Is Materially Distinguishable From That In *Demers*

Dr. Jensen's read of *Demers* is the lynchpin of his argument. A close review of the decision is warranted.

Though superficially similar to this action – in that it involves a First Amendment retaliation claim by a state worker employed at an institution of higher education – *Demers* involved very different facts. Plaintiff in that case engaged in the following expressive conduct: (1) he drafted and distributed a pamphlet that contained a plan for restructuring of one of the colleges within the university at which he was employed; and (2) he drafted and distributed portions of an in-progress book regarding the "the role and function of social science research in society[.]" *Demers*, 746 F.3d at 406-08.

A critical distinction is that the distribution at issue in Demers involved sending these documents to numerous individuals in numerous different contexts over a period of time. Over at least two months, the Plaintiff sent the plan

35

document to the university provost, the president, various administrators, other colleagues, a professional advisory board, print and broadcast media, and others. *Demers*, 746 F.3d at 407. The excerpt of the book was apparently sent to university administration as part of plaintiff's application for a sabbatical and also appeared online. *Id*. at 408. This distribution pattern could not possibly have occurred in a single meeting, and there is no indication it was undertaken in a manner that was off the agenized topic at a work event or in defiance of direct instructions from a supervisor.

This fact pattern is starkly different than that described in the FAC. The only expressive activity alleged in any detail in the FAC was the off-topic attempt to distribute criticism of TMCC's implementation of the Board of Regents' new policy, at a meeting called for the express purpose of explaining that implementation. ER212-15, FAC ¶¶ 26-45. The conduct in *Demers* is so factually distinct that, even if the case could be read to announce a well-established right going forward (which it does not, see *infra* at 37-41), Dr. Jensen's conduct is certainly not within that right. No reasonable administrator, even if intimately familiar with the holding in *Demers*, could possibly have understand Dr. Jensen's conduct at the Math Summit – as described by his own verified allegations – to be immunized from disciplinary response by that decision.

b. Even if Not Distinguishable From the Instant Case, *Demers*
Does Not Clearly Establish The Alleged Right

The Opening Brief argues that the clearly established right, which must be

plausibly alleged to defeat Administrators' qualified immunity, is the right

purportedly articulated in *Demers* for state employees to speak on matters of public

concern related to academic scholarship and teaching. Opening Brief at 30.

The Opening Brief overstates the effect of *Demers*. The main effect of that

decision is to modify the previously-existing framework for First Amendment

retaliation claims when such are alleged by a putative academic employee.

*Demers* was not decided in a vacuum. Before that decision, the Ninth Circuit

articulated a useful framework for analyzing First Amendment retaliation claims,

gathering relevant Supreme Court and Circuit authority in *Eng v. Cooley*, 552 F.3d

1062 (9th Cir. 2009). Under *Eng*, a First Amendment retaliation plaintiff must

adequately allege facts that would satisfy five prongs: (1) the speech addressed an

issue of public concern; (2) plaintiff spoke as a private citizen; (3) plaintiff's

protected speech was a substantial motivating favor in an adverse employment

action; (4) the state did not have an adequate interest to justify its action; and (5)

the state would not have taken the action absent the protected speech. 552 F.3d at

1070.

The rule established by *Demers* relates to the second prong. That prong

incorporates the Supreme Court's decision in *Garcetti v. Ceballos* and provides

37

that "the plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee." *See Eng*, 552 F.3d at 1071 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006) 547 U.S. 410, 418 (2006)).

*Demers* simply clarifies the *Eng* framework in that the "*Garcetti* [prong] does not apply to speech related to scholarship or teaching." *Demers*, 746 F.3d at 406. In other words, if a plaintiff adequately alleges they engaged in speech related to scholarship or teaching, their First Amendment retaliation burden to satisfy *Eng's* second prong (derived from *Garcetti*) is dropped. The balance of the framework otherwise still applies to this type of claim.

That this reading of the effect of *Demers* is correct is clear from the plain text of the decision. After concluding that academic speech is not subject to *Garcetti*, the Court went on to analyze whether the speech was of public concern, which is the first prong of the *Eng* test. *See Demers*, 746 F.3d at 415; *Eng*, 552 F.3d at 1070. Later, the Court referred to the remaining questions at issue, listing the remaining factors in *Eng*: whether the state had an interest in sanctioning the plaintiff; whether protected speech was a substantial motivating favor in the sanction; and whether the state would have sanctioned the employee absent the speech. *Compare Demers*, 746 F.3d at 417 (addressing remaining three prongs) *with Eng*, 552 F.3d at 1071-72 (same three prongs). And settling any doubt that *Demers* affirms the

38

ongoing viability of those *Eng* prongs, it relies on a case that, in turn, relies on

*Eng. Demers*, 746 F.3d at 417 (relying on *Anthone v. N. Cent. Cntys. Consortium*,

605 F.3d 740, 748 (9th Cir. 2010), which in turn cites *Eng* for the five-part test).

The underlying basis for the *Demers* holding further confirms it was

primarily concerned with removing *Garcetti* from the analysis when the speech

relates to scholarship or teaching:

> . . . *Garcetti* left open the possibility of an exception. In response to a concern expressed by Justice Souter in dissent, the Court reserved the question whether its holding applied to "speech related to scholarship or teaching." . . . Justice Souter had expressed concern about the potential breadth of the Court's rationale, writing, "I have to hope that today's majority does not mean to imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to ... official duties.'" . . . (Souter, J., dissenting) (alteration in original).

*Demers*, 746 F.3d at 411(citing ref's omitted).

As stated, Justice Souter's concern was the possibility that academic speech

could lose protection under *Garcetti* if such could be characterized as part of "an

official duty." *Id*. That concern was addressed in *Demers* by removing the private

capacity requirement from the framework when the speech at issue relates to

scholarship or teaching. Nowhere does the *Demers* decision indicate a broader

holding or the recognition of an expansive or absolute right for academic speech.

*Demers* also suggests that its application depends on the on-the-ground judgement of state officials. The Court recognized the difficulty in assessing institutional interests, noting "[p]ossible variations are almost infinite" and that courts should "hesitate before concluding we know better than the institution itself the nature and strength of its legitimate interests." *Demers*, 746 F.3d at 413. Accounting for that observation, it is difficult to discern a bright-line rule that is so clear that the Administrators should have known the alleged conduct was violative.

Finally, the Opening Brief is unpersuasive in its attempt to grapple with the fact that *Demers* concluded the defendants there were entitled to qualified immunity. *See* 746 F.3d at 417. The decision does not explicitly announce a clearly-established right going forward. And, as just noted, it suggests hesitation in adopting bright-lines when assessing institutional interests.

The Opening Brief mistakenly relies on the decision in *Murray v. Williams*, 46 F.Supp.3d 1045 (D. Nev. 2014) for the proposition that the legal landscape on academic speech is now clear. Opening Brief at 31. That decision was later reversed in relevant part. *See Murray v. Williams*, 670 F. App'x 608, 609 (9th Cir. 2016) (unpublished). In overruling the District Court, this Court held that "[B]ecause the underlying determination ... [of] whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, **the law regarding such claims will rarely, if ever, be**

40

**sufficiently 'clearly established' to preclude qualified immunity**." *Murray v. Williams*, 670 F. App'x 608, 609 (9th Cir. 2016) (unpublished) (citing ref's omitted) (emphasis added).

        c.  Even if *Demers* Does Stand For A Clearly-Established Right The
            FAC Does Not Plausibly Allege a Violation of That Right

Even if *Demers* supports a clearly-established First Amendment right, the FAC does not plausibly allege a violation of such a right. This is because neither the FAC, nor the Opening Brief, meaningfully engage in the framework that continues to apply post-*Demers*, as discussed just above.

In terms of expressive conduct, the FAC focuses almost exclusively on the events of the Math Summit. What is alleged describes conduct that plainly violates NSHE's prohibition on insubordination. *See* ER213-15, FAC ¶¶ 33, 38, 40-43 (describing a series of express or implied instructions from Dr. Jensen's supervisor and his subsequent disregard of her instructions). This meets the undisputed definition of insubordination under NSHE's rules in that it constitutes "willful disregard of express or implied directions, or such a defiant attitude as to be equivalent thereto." *See Richardson v. Bd. of Regents*, 269 P.2d 265, 276 (Nev. 1954). Dr. Jensen has acknowledged the same definition. *See* ER43, Plaintiff-Appellant's Brief in Opp. to Motion to Dismiss at 18:24-26.

The state has a legitimate supervisory interest in preventing insubordination. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (recognizing state interest in

41

avoiding impairment of discipline) (citing *Pickering v. Board of Ed.*, 391 U.S. 563, 570-73 (1968)); *Connick v. Myers*, 461 U.S. 138, 151 (1983) ("the Government, as an employer, must have wide discretion and control over the management of its employees and internal affairs); *Cochran v. Los Angeles*, 222 F.3d 1195, 1200 (9th Cir. 2000) (employer interest in preserving discipline outweighs employee interest in speech); *Pool v. VanRheen*, 297 F.3d 899, 909 (2002) (same). And, there is no "necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *See Connick*, 461 U.S. at 152.

The conduct alleged in the FAC fits squarely within this legitimate disciplinary interest. Yet, nowhere does the pleading acknowledge such an interest or attempt to balance it against Dr. Jensen's interests, as a First Amendment retaliation claim requires. *See, e.g., Demers*, 746 F.3d at 417 (elements of First Amendment retaliation claim for academic speaker include question of "whether defendants had a sufficient interest in controlling or sanctioning" employee's conduct). Even if every non-conclusory allegation in the FAC were true, they fail to amount to a set of plausible allegations that the state's interests were not greater than Dr. Jensen's, in light of the misconduct his own pleading describes.

For similar reasons, the FAC fails to plausibly allege that suppression of speech – as supposed to the prevention of obvious misconduct – was a substantial

motivating factor or that the Administrator's would have acted otherwise if the insubordination was not in the form of speech. *See id*. (elements of First Amendment retaliation claim for academic speaker include whether protected speech was substantial motivating favor in adverse employment action and whether state would have taken such action absent the speech).

Even if *Demers* establishes a clear right, the FAC still must plausibly allege a violation of such a right. *See Wesby*, 583 U.S. at 62-63 (holding exception to qualified immunity requires a violation). As established above, the FAC does not plausibly allege a violation of any right articulated in *Demers* because it fails to speak to all elements of a First Amendment Retaliation claim.

For the same reason, the FAC fails to allege the required elements of such a claim, meaning the District Correctly dismissed these causes of action even if qualified or sovereign immunity does not apply. Failure to adequately allege even one of the five *Eng* prongs is fatal, and courts are free to address the prongs in any order. *See Coomes v. Sch. Dist.*, 816 F.3d 1255, 1260 (9th Cir. 2016) (citing *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n. 4 (9th Cir. 2013) (en banc)).

### 3. The Other Authorities Relied On By The Opening Brief Do Not Support A Clearly-Established Federal or Constitutional Right

The Opening Brief cites authority from several other Circuit Courts which purportedly "unequivocally affirm[] the academic protections afforded to professors under the First Amendment." Opening Brief 32. It is not plausible

43

Administrator's would be on notice of out-of-Circuit authority. In any case, the way this argument is framed reveals why these authorities do not resolve the instant question. Generic "academic protections" – which is what these cases purportedly establish – are not the type of "well defined" rule that would "clearly prohibit" the alleged actions by Administrator's in the "particular circumstances" before them. And, as discussed above, a close read of the FAC reveals such a generic rule is not, in fact, what Dr. Jensen is advancing. The actual rule he would have this Court adopt – essentially blanket immunization from discipline for any conduct so long as it can be characterized as academic speech on a matter of public concern – is not contained in any of these decisions.

Similarly, the Supreme Court of Nevada's decision in *Richardson* does not support the existence of the clearly-established right Dr. Jensen urges. Most importantly, that decision did not involve questions of federal law and accordingly cannot support the conclusion that a clearly-established federal statutory or constitutional right was violated, such that qualified immunity is not available. *See Wesby*, 583 U.S. at 62-63. If, as the Opening Brief argues, the District Court did not apply *Richardson*, that was not error as that state court decision is not relevant to this issue.

In addition, the Opening Brief (at pg. 36) does not accurately characterize the holding in *Richardson*. That decision does not hold that a professor *per se*

44

cannot be insubordinate for distributing an article. It held only that the professor in that case was not insubordinate because, unlike here, there was no direction or instruction that was disregarded. *See* Richardson, 269 P.2d at 275-76 (noting there was no order, etc., that was violated). And the *Richardson* court expressly disavowed the type of sweeping holding the Opening Brief would attribute to it. *Id.* at 266 ("The extent to which the regents may limit, curtail or eliminate entirely faculty participation in matters of the curriculum, entrance requirements, or other academic policies is *not* involved in this proceeding").

Similarly, the NSHE Handbook provisions cited by the Opening Brief (at pp. 38-39), are not federal statutes or constitutional provisions and cannot support the clearly-established right Dr. Jensen asserts here.

### C. The District Court Correctly Dismissed the Due Process Claims For Failure to Establish A Constitutional Violation

The District Court correctly dismissed the FAC's due process claim against Administrators in their personal capacity on the basis that they are "afforded qualified immunity because Dr. Jensen has failed to establish a constitutional violation with regard to this claim for a procedural due process violation." ER21, Opinion at 16:23-26. The Opening Brief contains no argument that the District Court erred in its analysis of the liberty interests actually alleged in the FAC. *See* Opening Brief 39-43. Thus, it appears Dr. Jensen concedes the District Court did not err in this respect.

45

Rather, the Opening Brief attempts to rely on various unpled purported rights at issue. These include a newly identified liberty interest in purported First Amendment rights. *Id*. at 40. The Opening Brief also refers to additional purported property rights that were never alleged but were raised below in briefing. *Id*. at 42. These include purported property interests in "academic freedom, right to maintain standards of curriculum, right to have the process for faculty termination followed, and right to not be charg[ed] with insubordination for distributing handouts." *Id*.

However, the Opening Brief does not point to a single authority that recognizes these purported rights as protected liberty interests for the purposes of a due process claim. Moreover, the District Court did not err in declining to consider unpled allegations, introduced for the first time in motion practice. ER19, Opinion at 14:23, n. 9.

Though not addressed in the Opening Brief, the District Court did not err in concluding the FAC failed to plead a constitutional violation with respect to the liberty interest it actually identified. A due process claim has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of that interest by the state; and (3) a lack of process. ER19, Opinion at 14:13-16 (citing *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022)). Here, the FAC alleges the protected interests at issue are Dr. Jensen's interest in (1) avoiding

termination; (2) his reputation; and (3) future employment opportunities. ER226, FAC ¶¶ 122-24.

With respect to avoiding termination, the FAC alleges that Dr. Jensen is still employed at TMCC. ER209, FAC ¶ 9. Absent loss of employment, no deprivation of this interest occurred. *See Gearhart v. Thorne*, 768 F.2d 1072, 1073-74 (9th Cir. 1985) (due process violation not adequately alleged where state employee retained employment).

The FAC's allegations concerning Dr. Jensen's interest in his good name do not allege a protected interest. Generally, reputation is not a protected liberty interest. *See Paul v David*, 424 U.S. 693, 711-12. Such may be protected when a plaintiff is subject to "[c]harges that carry the stigma of moral turpitude" such as dishonesty or immorality. *See Portman v. County of Santa Clara*, 995 F.2d 898, 907 (9th Cir. 1993). However, "charges of . . . inability to get along with others" do not implicate any reputational liberty interest. *Id.* The FAC is generally silent on the nature of the disciplinary charges against Dr. Jensen. A review of the charging letter, incorporated by reference in the FAC, reveals the basis for the effort to discipline Dr. Jensen was essentially insubordination and unprofessional conduct. ER219, FAC ¶ 76; ER105, Charging Letter. These are not charges of moral turpitude as is required to invoke the liberty interest. The FAC also does not assert

47

any genuine deprivation of reputational interest because it contains only conclusory of reputational harm, without any details.

Similarly, interests in future employment are only protected when an employee is dismissed "for reasons that might seriously damage his standing in the community . . ." *Portman*, 995 F.2d 898 at 907. As with the reputational interests already discussed, the required allegations of charges of dishonesty or immorality are not alleged here. And, there is no allegation of actual deprivation, as the FAC does not allege that Dr. Jensen sought other employment and was not able to obtain it due to Administrator's actions.

Finally, with respect to all three asserted interests, the FAC does not plausibly allege a lack of process. Such a claim requires plausibly alleging a lack of (i) notice of the charges; (ii) an explanation of the supporting evidence; or (iii) an opportunity to present his side of the story. *See Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985). The FAC does not allege the absence of any of these factors. Nor does it allege Dr. Jensen was denied the substantial procedural protections required by the NSHE Handbook, which include notice, access to the documents to be used at the hearing, and the chance to defend himself. *See supra* at 7-10.

### D. The District Court Correctly Dismissed the Equal Protection Claim for Failure to Allege A Constitutional Violation

The District Court also correctly dismissed the Equal Protection claim, as asserted against Administrators individually, "because Dr. Jensen has failed to allege a constitutional violation of the Equal protection Clause." ER23, Opinion at 18:14-16. As the District Court correctly noted, an equal protection plaintiff must identify the protected class to which they belong and a claim "will not lie by conflating all persons not injured into a a preferred class receiving better treatment than the plaintiff." ER23, Opinion at 18:1-6 (citing *Thornton v. St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005)).

There is no error in the District Court's analysis. The FAC is almost entirely silent on the Equal Protection claim. *See* ER228-29, FAC ¶¶ 140-45. At its most specific, it alleges that through the various wrongdoing alleged elsewhere in the FAC "Defendants by policy and practice have treated Dr. Jensen differently than similarly-situated Professors and deprived him of his ability to freely express his ideas on issues of public concern at TMCC." ER228-29, FAC ¶¶ 142-43. Such allegations do not identify a protected class as required.

The District Court correctly concluded the the FAC contains nothing but conclusory allegations on this cause of action which, at best, amount to placing him into a class of one who has not been treated as well as others. ER23, Opinion at 18:7-13. These allegations do not plead a plausible Equal Protection claim and

49

the District Court was correct in dismissing this claim against individual Administrators as barred under the doctrine of qualified immunity for failure to allege a constitutional violation." *Id.*, Opinion at 18:14-19.

## III. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DISMISSING THE FAC WITH PREJUDICE

A District Court does not abuse its discretion when it dismisses a complaint with prejudice when the plaintiff fails to identify an amendment, consistent with the facts already alleged, that would give rise to a viable claim. *See Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012). Here, the only specific amendment identified by Dr. Jensen relates to a single email obtained in discovery that purportedly shows a conspiracy by Administrators to "weaponize the university police department" as part of the alleged retaliation. Opening Brief 40, 45. The email in question was not referenced in the FAC but is on the record as ER273-75.

Nothing in this email would make the FAC's allegations concerning prospective relief or clearly-established rights more plausible. It shows that Defendant-Appellee Dr. Ellsworth reached out to human resources over a concern about potential disruption at the Math Summit. *Id*. Later in the email, Dr. Ellsworth says she does not need university police on hand. *Id*. The fact Dr. Ellsworth was concerned about possible disruption in advance adds nothing that would make the FAC a viable pleading.

50

In any event, Dr. Jensen had ample opportunity to seek leave to amend the FAC after learning of this email, but he chose not to. This is discussed in the Relevant Procedural Background, *supra* at 15-16. In sum, Dr. Jensen sought to add this email to the record through a procedurally improper motion to amend briefing papers. *Id*.; ER264-69, Motion to Amend Briefing Papers. In the resulting motion practice, Dr. Jensen acknowledged the procedural impropriety but stood behind his request to add new facts via briefing. *See* ER281, Reply In Support of Motion to Amend Briefing Papers, at 2:11-14.

In opposing the motion to amend briefing papers, Administrators gave Dr. Jensen clear notice as to the correct way to amend a pleading. *See supra* at 15-16; ER276-79. This was almost a year before the FAC was dismissed on September 27, 2023. ER6-25. Dr. Jensen could have made a motion to amend his complaint at any time during this year; he chose not to. Instead, he ignored the rules and doubled-down on the procedurally improper attempt. Dr. Jensen is no *pro se* plaintiff. He was represented below by four attorneys. Docket For Case No. 3:22-cv-00045-LRH-CLB (D. Nev.). On these facts, it was well within the Court's discretion to dismiss the case with prejudice.

51

### IV. THE COURT SHOULD DISREGARD THOSE PORTIONS OF THE OPENING BRIEF WHICH ENGAGE IN *AD HOMINEM* ATTACKS OR RAISE NEW ARGUMENTS

#### A. The Court Should Disregard the Brief's Repeated *Ad Hominem* Attacks Against the District Court, Counsel, And the Parties

The Opening Brief contains multiple *ad hominem* attacks directed openly at the District Court and, impliedly, at undersigned counsel and the Administrators. Generally, this type of extraneous material warrants no attention. However, in this instance, the statements are both extreme and pervasive, and a response is required.

Most inappropriate are the Opening Brief's repeated and baseless attacks on the District Court's integrity and competence. The papers accuse Judge Hicks of "abdicat[ing] his sworn oath to the Constitution", seemingly for no more reason than disagreeing with Dr. Jensen's contentions. Opening Brief at 47. Elsewhere, the Opening Brief all but accuses Judge Hicks of bias by "favoring NSHE's interests at all costs" through issuing decisions that "undermine the rights of individuals like Dr. Jensen" and "erode trust in the fairness and integrity of our legal system". *Id*. at 29 n. 55 [*sic*.]. The Opening Brief attributes this purported bias to "a desire to protect a popular public institution[.]" *Id*. There is no allegation, let alone a shred of evidence, of this claim on the record. Elsewhere, the Opening Brief devolves into name-calling, asserting the District Court's analysis was "lazy" and its holding "ridiculous[.]" Opening Brief at 18, 24.

52

The Opening Brief's ire also targets counsel, falsely implying that "Attorneys representing NSHE" – such as undersigned counsel – are so ethically compromised that they "could easily facilitate coverups of egregious misconduct including sexual abuse, rape, corruption, discrimination, embezzlement, nepotism, abuse of process, defamation, and other serious crimes" as well as "manipulate information, withhold crucial evidence, and even fabricate documents to suit their agenda, potentially committing fraud upon a court of law." Opening Brief at 23-24, notes 3 and 4. Again, these false claims are unpled and lack any support.

Finally, the Opening Brief refers to NSHE becoming "a playground for malicious narcissists, psychopathic criminals, and serial predators who would prey on others. Eventually such an outcome would likely lead to NSHE administrators being arrested for abuse of process and other serious crimes." Opening Brief. at 24. If the reference in the foregoing to "NSHE administrators" was not clear enough, a footnote to this assertion indicates it refers to individuals represented by NSHE attorneys – in other words the Administrators who are the Defendants-Appellees in this action. *Id*. n. 4.

All of the foregoing should be disregarded, primarily because none of it is pled or otherwise supported on the record. This overheated rhetoric has no bearing on the issues before the Court and offers no assistance in resolving the appeal. Moreover, the allegations of wrongdoing are false.

The baseless assertions that the District Court essentially abandoned its duties and abrogated its Constitutional oath, as well as the attacks on the District Court's competence, wrongly impugn Judge Hicks' ability and integrity. Such statements appear to implicate the Nevada Rule of Professional Conduct, which prohibit Nevada licensed attorneys from making false statements about the "qualifications or integrity of a judge[.]" NV ST RPC Rule 8.2. The rule also prohibits such statements if made "with reckless disregard as to its truth or falsity[.]" *Id.*

Similarly, the repeated *ad hominem* attacks on counsel and the parties, appears to implicate another Nevada Rule of Professional Conduct, which provides that "a lawyer shall not use means that have no substantial purpose other than to embarrass . . . a third person[.]" NV ST RPC Rule 4.4(a)). Given the foregoing attacks on the District Court, counsel, and the parties have no analytical value, it appears the statements are designed simply to embarrass all of the foregoing.

This invective also falls short of the expectations of the State Bar of Nevada, as expressed through its Creed of Professionalism and Civility, which calls for participants in the legal system to act with courtesy, refrain from disparaging personal remarks, and to refrain from attribution of bad motives or improper conduct to counsel, absent good cause. *See* https://nvbar.org/for-lawyers/ethics-discipline/creed-of-professionalism-and-civility/, Creed Nos. 2-4.

54

The clear tension between the remarks in the Opening Brief that are mentioned in this section and the aforementioned authorities and principles is further reason to give no credit to these arguments and disregard them entirely from the Court's analysis.

### B. The Court Should Disregard Arguments Not Raised Below

The Opening Brief suggests that NSHE, and by extension Administrators in their official capacity, should not be afforded sovereign immunity. *See* Opening Brief at 14, n. 2. This argument appears to argue an overall lack of immunity, not just an exception tied to purported prospective relief. The argument that NSHE is not entitled to sovereign immunity as a general matter was never raised below. It also relies on several factual assertions that are not in the FAC. The argument is also contrary to settled law. *See supra* at 19-20.

Similarly, the Opening Brief attempts to inject new, unpled allegations about NSHE's purported statutes as a fourth branch of government and its internal culture. *Id*. at 16, n. 1.

In addition, as noted at p. 46, *supra*, the Opening Brief attempts to premise its due process argument on a new set of purported liberty interests that were never pled.

Arguments not raised below, and factual assertions not pled, should be disregarded.

## **CONCLUSION**

For the foregoing reasons, Administrators respectfully request that this

Court affirm the District Court's Opinion below, dated September 27, 2023.


DATED March 20, 2024

<div style="margin-left:40%">

*s/ Kiah Beverly-Graham*

Kiah D. Beverly-Graham,
General Counsel
Truckee Meadows Community College
*Attorney for Defendants/Appellees*

</div>

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,991 words, excluding the items listed in Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman 14-point font.

DATED March 20, 2024

*s/ Kiah Beverly-Graham*
Kiah D. Beverly-Graham,
General Counsel
Truckee Meadows Community College
*Attorney for Defendants/Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Nevada System of Higher Education, over the age of eighteen years, and that I am not a party to the within action. I further certify that on March 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<div style="text-align: right;">

s/ Catherine Bandoni
Employee of the Nevada
System of Higher Education

</div>