No. 23-2545
_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

LARS JENSEN, an individual,

*Plaintiff-Appellant*,

v.

NATALIE BROWN, in her individual and official capacities as
Administrative Officer at Truckee Meadows Community College;
JULIE ELLSWORTH, in her individual and official capacities as
Dean of Science at Truckee Meadows Community College; ANNE
FLESHER, in her individual and official capacities as Dean of Math
and Physical Sciences at Truckee Meadows Community College;
KARIN HILGERSOM, in her individual and official capacities as
President of Truckee Meadows Community College; MARIE
MURGOLO, in her individual and official capacities as Vice
President of Academic Affairs at Truckee Meadows Community
College; MELODY ROSE, in her individual and official capacities as
Chancellor of the Nevada System of Higher Education,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:22-cv-00045-LRH-CLB
Hon. Larry R. Hicks

_____

## REPLY BRIEF OF PLAINTIFF-APPELLANT
_____

[counsel of Plaintiff-Appellant listed on next page]

John M. Nolan, Esq. (NSBN 15790)
2750 Peavine Creek Rd.
Reno, Nevada 89523
Telephone: (775) 786-5477
jmnolan84@gmail.com
*Attorney of Record for Plaintiff-Appellant*

Michael Langton, Esq. (NSBN 290)
801 Riverside Drive Reno, NV 89503
Telephone: (775) 329-3612
mlangton@sbcglobal.net

Mark Mausert, Esq. (NSBN 2398)
Sean McDowell, Esq. (NSBN 15962)
729 Evans Avenue
Reno, Nevada 89512
Telephone: (775) 786-5477
mark@markmausertlaw.com
sean@markmausertlaw.com
*Attorneys for Plaintiff-Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................v

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................3

    I.      DR. JENSEN SOUGHT PROPER INJUNCTIVE RELIEF FOR ONGOING VIOLATIONS OF HIS CIVIL RIGHTS BY SEEKING AN INJUNCTION TO EXPUNGE NEGATIVE PERSONNEL RECORDS........................................................................3

           A.     Contrary to the arguments of Defendants-Appellees and the district court Dr. Jensen alleged ongoing violations in the First Amended Complaint.……………………………………..……4

           B.     Defendants-Appellees are wrong that the First Amended Complaint did not seek prospective injunctive relief to stop the ongoing violations of his Civil Rights through expungement of negative personnel records…………………………………..…..8

           C.     Defendants-Appellees' attempt to distinguish caselaw is unpersuasive since prospective injunctive relief from continuing violations of constitutional rights is not limited by age, grade level, or educational background when seeking expungement of negative personnel records…………….…11

           D.     Expunging negative personnel records, constituting ongoing civil rights violations, is imperative to safeguard academic freedom and free expression…………………………..……...15

    II.     DEFENDANTS-APPELLEES WERE NOT ENTITLED TO QUALIFIED IMMUNITY SINCE DR. JENSEN HAS SHOWN THE LAW IS CLEARLY ESTABLISHED…………..…………………..17

           A.     Dr. Jensen exercised a clearly established right and was retaliated against……………………………………..……19

iii

B.    Defendants-Appellees have not shown Dr. Jensen was insubordinate……………………………………………………22

C.    Defendants-Appellees have not shown Dr. Jensen was disruptive………..……………………………………………24

D.    Defendants-Appellees attempt to distinguish *Demers* is unpersuasive given the facts and well-established caselaw…..25

E.    Defendants-Appellees attempt to distinguish *State ex rel Richardson* is unpersuasive and further demonstrates the law in Nevada was not changed by *Garcetti*………………………...26

III.    PRIOR PROCEEDINGS…………………………………………28

A.    Defendants-Appellees Mischaracterize Dr. Jensen's Legitimate Criticism……………………………………………...…28

B.    The Case for Reversing and Remanding with Instructions to Grant Leave to file a Second Amended Complaint..………...29

CONCLUSION ......................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamian v. Lombardi,*
608 E2d 1224 (9th Cir. 1979), cert. denied, 446 U.S. 938 (1980)…...27

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
824 F.3d 858 (9th Cir. 2016)…………………….…………………4

*Connick v. Myers*,
461 U.S. 138 (1983)……………………………………18, 19, 22

*DeJohn v. Temple University*,
537 F.3d 301 (3d Cir. 2008)…………………………………….4

*Demers v. Austin*,
746 F.3d 402 (9th Cir. 2014)…………… 17, 18, 19, 21, 22, 25, 27, 30

*Doe v. Petaluma City Sch. Dist.,*
54 F.3d 1447 (9th Cir. 1995)…………………………………17

*Dunn v. Castro,*
621 F.3d 1196 (9th Cir. 2010)…………………………………..17

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003)…………………...………8, 30

*Eng v. Cooley,*
552 F.3d 1062 (9th Cir. 2009)………………...……………27

*Ex Parte Young,*
209 U.S. 123 (1908)……………...…………………………3, 4

*Garcetti v. Caballos,*
547 U.S. 410 (2006)………….……...…………………18, 26, 27

*Green v. Mansour,*
474 U.S. 64 (1985)……………………………..…………..3, 4

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018)…………………………….…..…8

*Karl v. City of Mountlake Terrace,*
    678 F.3d 1062 (9th Cir. 2012)………………………….……….22

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.,*
    385 U.S. 589 (1967)……………………………………………27

*Kwan v. SanMedica Int'l,*
    854 F.3d 1088 (9th Cir. 2017)……………………………..6, 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008)……………………………….6, 21

*Monnell v. N.Y.C. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)……………………………………….....4

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,*
    *391 U.S. 563 (1968)*……………………….…17, 18, 19, 22, 25, 30

*R.W. v. Columbia Basin College,*
    77 F.4[th] 1214 (9th Cir. 2023)………………………………..3, 4

*State ex rel. Richardson v. Board of Regents*,
    70 Nev. 347, 269 P.2d 265 (1954)………………....…22, 23, 26, 27

**Statutes**

    42 U.S.C. § 1983……………………………...............................12

**Rules**

    FRCP 1………………………………………………………2, 29, 31

**Other Authorities**

    David Demers, 7-Step Plan for Improving the Quality of the Edward R.
        Murrow School of Communication and Making it Financially
        Independent (2007)……………………………………..………25, 26

vi

Lars Jensen, On the Math Pathways at TMCC - A Look Under the Hood
  (2020)…………………………………………..15, 20, 23, 24, 26

U.S. Const. Amend I…………………………………………..passim

# INTRODUCTION

The district court and Defendants-Appellees have conceded or failed to contest that Plaintiff-Appellant ("Dr. Jensen") was a victim of egregious civil rights violations. Defendants-Appellees, wielding the full administrative power of a popular public institution, orchestrated a vindictive campaign aimed at harming Dr. Jensen's professional reputation for merely engaging in professional discourse on matters of public concern related to teaching and scholarship. As an academic employee, Dr. Jensen possessed a clearly established right to speak on matters of public concern related to teaching and scholarship, without fear of facing retaliation or other adverse employment actions, so long as the speech was not unreasonably disruptive or impeded the efficiency of public services.

First, Defendants-Appellees' attempt to spin Dr. Jensen's situation as a "victory" is gross distortion of the facts. Answering Brief at 25. Contrary to this assertion, Dr. Jensen did not prevail at his termination hearing; rather, he simply was not terminated. ER-19; ER-21; ER-74; ER-108; ER-262. It is important to emphasize that Dr. Jensen has not been exonerated and is subject to the ongoing threat of further termination proceedings at the discretion of Defendants-Appellees. The negative and inflammatory records in Dr. Jensen's personnel files continue to violate his civil rights by perpetuating damage to his professional reputation,

hindering his career prospects, and instilling an ongoing fear of further retaliation, thereby chilling his speech and academic freedom. ER-206; ER-209; ER-223.

Second, Defendants-Appellees and the district court have consistently faulted Dr. Jensen for alleged deficiencies in his First Amended Complaint but conveniently overlooked the obstructionist tactics employed against Dr. Jensen, which included the withholding of documents necessary for the preparation of his termination hearing and this litigation. It was only after the intervention of Magistrate Judge Baldwin, who ordered discovery to proceed, that some documents were produced. ER-294; ER-237-263. The district court's erroneous rulings on sovereign immunity and qualified immunity, contrary to the magistrate judge's previous determinations, underscore the need for a remand and reversal to afford Dr. Jensen the opportunity to file a Second Amended Complaint.

Third, the district court's blanket dismissal of all claims without the opportunity to amend his complaint denied Dr. Jensen a fair adjudication on the merits. This procedural rigidity runs counter to Federal Rule of Civil Procedure 1, which prioritizes the just, speedy, and inexpensive resolution of legal disputes. Dr. Jensen's repeated denials of leave to amend, the denial of oral argument on multiple occasions, and denial of requests for judicial notice further underscore the need for a reversal and remand to allow for a fair and equitable resolution of this case. ER-49; ER-26; ER-133-179.

2

Finally, the record on appeal paints a vivid picture of retaliatory actions that any reasonable higher education administrator would readily recognize as flagrant violations of clearly established civil rights. Defendants-Appellees' attempts to shield themselves from accountability for these violations of civil rights are unacceptable and in violation of this honorable Court's precedent. Dr. Jensen respectfully requests that this honorable Court reverse the district court's order and remand the case for trial.

## ARGUMENT

I. **DR. JENSEN SOUGHT PROPER INJUNCTIVE RELIEF FOR ONGOING VIOLATIONS OF HIS CIVIL RIGHTS BY SEEKING AN INJUNCTION TO EXPUNGE NEGATIVE PERSONNEL RECORDS.**

In the Ninth Circuit, "[f]or a suit to proceed under *Ex Parte Young*, the plaintiff must allege —not prove—an ongoing violation of federal law for which she seeks prospective injunctive relief." *R.W. v. Columbia Basin College*, 77 F.4th 1214, 1221 (9th Cir. 2023)(citing *Koala v. Khosla,* 931 F.3d 887, 895 (9th Cir. 2019)). The narrow exception in *Ex Parte Young* serves as a shield against constitutional violations by state officials and "…gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Further, this Court's decision in *R.W. v. Columbia Basin College*, 77 F.4th 1214 (9th Cir. 2023), is not limited to only prospective relief dealing with reinstatement since it cited a decision from the Third Circuit that dealt with challenges to a university policy.

3

*DeJohn v. Temple University*, 537 F.3d 301 (3d Cir. 2008). Prospective injunctive relief can also include ancillary measures like practices, policies, or procedures that animate the constitutional violation. *Green v. Mansour*, 474 U.S. 64, 68-71 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monnell v. N.Y.C. Dep't of Soc. Servs*., 436 U.S. 658, 690 & n. 55 (1978); *Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 864 (9th Cir. 2016).* As noted in the Opening Brief, negative records can constitute an ongoing violation of federal law that triggers the *Ex Parte Young* exception. *R.W.,* 77 F.4th at 1227; Opening Brief at 15-25.

Defendants-Appellees Answering Brief attempts to change the standard described above to require a plaintiff to "prove" an ongoing violation of federal law in a complaint; however, that is not the law. Answering Brief at 23-26. Dr. Jensen alleged multiple ongoing violations of constitutional rights in his First Amended Complaint, which included silencing his academic freedom, public humiliation, negative annual performance evaluations, investigations, emotional distress, stress, anxiety, and psychological trauma. ER-207-208; ER-216-222; ER-225-230.

**A**.  **Contrary to the arguments of Defendants-Appellees and the district court Dr. Jensen alleged ongoing violations in the First Amended Complaint.**

Dr. Jensen outlined in his First Amended Complaint a series of ongoing violations of his constitutional rights that are still inflicting ongoing harm. ER-

207-208; ER-216-222; ER-225-230. These allegations of ongoing harm are directly linked to the prospective injunctive relief that Dr. Jensen is seeking through the expungement of negative records from his personnel files.

First, Dr Jensen specifically alleged that his professional reputation had been damaged:

> "59. Dr. Ellsworth's incorrect annual performance evaluations of Dr. Jensen for the 2019-2020 academic year *negatively impacted his academic reputation and future merit pay*.
> 60. The notice of reprimand, the letter of reprimand, and the adverse annual performance evaluation issued by Dr. Ellsworth can only be explained by her motive to retaliate against Dr. Jensen for exercising his constitutionally protected rights to speak on matters of public concern." ER-217 (emphasis added).

Second, another example of ongoing harm caused by the negative records in his personnel files is that Dr. Jensen also clearly alleged in his First Amended Complaint that:

> "130. As a direct and proximate result of Defendants' unlawful actions, *Plaintiff has and will suffer irreparable harm, injury and damages, including, but not limited to false permanent findings and discipline on his record, damage to his standing in the community, damage to his personal and professional reputation, denial of future employment opportunities and earning capacity, mental and emotional distress, and humiliation and embarrassment*." ER-227 (emphasis added).

Third, Dr. Jensen specifically, alleged that the conduct in question caused irreparable harm by precluding his clearly established rights:

> "88. *Defendants' conduct has caused Plaintiff irreparable harm* by violating his First Amendment rights to free expression and

5

precluding him from engaging in First Amendment protected
expression in connection with teaching at TMCC." ER-221(emphasis
added).

Fourth, in Dr. Jensen's complaint, he specifically requested the relief of

expungement of negative personnel records and injunctive relief to stop the

ongoing constitutional violations.

"105. Dr. Jensen seeks prospective relief against the defendants acting
in their official capacities for full expungement of all negative
personal files, return of his 2019-2020 annual performance evaluation
to "excellent", and return of his 2020-2021 annual performance
evaluation to "excellent."" ER-223.

The inclusion of these negative records in his personnel files are ongoing

violations of federal law and remain a constant source of harm, inhibiting Dr.

Jensen's ability to secure future employment, harming his professional reputation,

and damaging other prospects. These factual allegations should be construed as

true and, in a light, most favorable to Dr. Jensen. *Manzarek v. St. Paul Fire &*

*Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008); *Kwan v. SanMedica Int'l*,

854 F.3d 1088, 1096 (9th Cir. 2017).

Fifth, Defendants-Appellees and the district court ignored that Dr. Jensen

sought prospective relief to change policies.

"D. Enjoining Defendants to rescind their unconstitutional adverse
employment actions against Dr. Jensen and to end their custom and
practice of taking adverse employment actions against faculty who
speak on matters of public concern;" ER-231.

This is also legitimate prospective relief that should be granted.

6

Sixth, it should also be noted that Defendants-Appellees arguments relating to Dr. Jensen's allegations regarding prospective injunctive relief being "conclusory" and "vague" do not rely on any authority. Essentially, it appears that Defendants-Appellees are requesting a fraud like level of pleading specificity by requiring Dr. Jensen to identify by name his family, friends, and employers that he will be forced to tell about the disciplinary proceeding and negative records. Answering Brief at 24-25. There was no authority that could be located that required that level of detail for pleading prospective injunctive relief for the expungement of negative personnel files. If this Court determines that such a standard exists, then Dr. Jensen specifically requests that he be able to file a Second Amended Complaint and he will list every person.

Seventh, Defendants-Appellees incorrectly characterize Dr. Jensen's termination proceeding resulted in a "victory." Answering Brief at 25. That is a distortion of the record. Dr. Jensen has not been exonerated and the proof is that the negative files remain in his personnel files. At any time, Defendants-Appellees can reinstitute termination proceedings based on the negative personnel files. Dr. Jensen is seeking to have his professional reputation reinstated and have the threat of future termination hearings be ended. These ongoing violations can only be

7

achieved through the expungement of the negative information from his personnel files.

Finally, if the district court was not satisfied with these allegations and requests, Dr. Jensen specifically requested leave to amend his complaint. ER-49. This Court has held, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Hicks v. PGA Tour, Inc*., 897 F.3d 1109 (9th Cir. 2018). The Ninth Circuit has held that leave to amend a complaint should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

**B.    Defendants-Appellees are wrong that the First Amended Complaint did not seek prospective injunctive relief to stop the ongoing violations of his Civil Rights through expungement of negative personnel records.**

The Answering Brief's argument that the expungement of negative personnel files not being ongoing violations is unpersuasive and illogical. Answering Brief 23-27. The expungement of these negative files is substantive relief that will uphold Dr. Jensen's constitutional rights.

First, Dr. Jensen did not prevail at the termination hearing, Defendant-Appellee Hilgersom simply decided to not terminate Dr. Jensen's employment. ER-19; ER-21; ER-74; ER-108; ER-262. This is an important distinction. It is also extremely important to recognize that the termination hearing was not an

8

isolated incident but rather the culmination of a multiyear retaliation campaign initiated by Dr. Jensen's exercise of his clearly established right as an academic employee to speak on matters of public concern related to teaching and scholarship. ER-207; ER-215-222.  The extensive negative files in Dr. Jensen's personnel files served as ammunition in this campaign, perpetuating a culture of intimidation and fear that is ongoing. ER-223; ER-231-232.  The continued inclusion of these files underscores the pervasive threat Dr. Jensen faces that at any time he could be subjected to another termination hearing that would negatively impact his future career prospects and reputation. ER-217; ER-227-228.

Second, the negative personnel files that Dr. Jensen seeks to have expunged would prevent him from gaining future employment.  ER-227; ER-231.  Whether he sought future employment in academia or outside, these files could unjustly harm his career advancement and prohibit him from gaining future employment. The legitimate fear of future career sabotage is ongoing and would create a chilling effect to any reasonable person.

Third, these negative personnel records that Dr. Jensen seeks to expunge also have implications beyond employment.  Since Defendants-Appellees subjected Dr. Jensen to a retaliatory termination hearing he would be forced to disclose this administrative proceeding on future applications for licenses or background checks.  This could potentially prevent Dr. Jensen from future

9

opportunities to volunteer at charitable organizations, or even prevent him from engaging in future entrepreneurial endeavors.

Fourth, the negative records directly impede Dr. Jensen's ability to fulfill his duties as an educator and researcher. By denying him the right to set syllabus policies and unfairly lowering his evaluations, the Defendants-Appellees stifle scholarly inquiry and academic autonomy. ER-45; ER-173; ER-216. This not only harms Dr. Jensen's career but also jeopardizes the pursuit of knowledge within the NSHE academic community. ER-27-28.

Fifth, Dr. Jensen's continued burden of living with the stigma of being labeled as "insubordinate" due to his exercise of constitutionally protected speech further demonstrates the urgent need for the prospective injunctive relief of expungement of negative personnel records associated with the First Amendment retaliation. ER-43; ER-215. Expungement of negative records associated with the violation of his clearly established constitutional rights is urgently needed to end the pattern and practice of violating the rights of individuals within the institution. ER-231. By removing these unjust sanctions from his personnel files, Dr. Jensen seeks to restore his professional reputation and safeguard the rights of others in NSHE to engage in free expression without the fear of retaliation.

Finally, expunging the negative records is essential to prevent adverse impacts on Dr. Jensen's participation in charitable activities and community

engagement. These records could unjustly tarnish his reputation and impede his ability to contribute meaningfully to society. Addressing this broader impact reinforces the ongoing violation of Dr. Jensen's civil rights and underscores the necessity of prospective injunctive relief.

Expunging the negative records from Dr. Jensen's personnel files is appropriate prospective injunctive relief that would stop the ongoing violations of Dr. Jensen's federal civil rights and would cure the harm inflicted.

    **C.    Defendants-Appellees attempt to distinguish caselaw is unpersuasive since prospective injunctive relief from continuing violations of constitutional rights is not limited by age, grade level, or educational background when seeking expungement of negative personnel records.**

Defendants-Appellees sweeping and unpersuasive arguments putting forth the notion that prospective injunctive relief can be denied based on age, grade level, or educational background sets a dangerous precedent that undermines the very essence of civil rights protections. The interpretations of this Court's prior precedents put forth by Defendants-Appellees would allow state officials carte blanche authority to deny the civil rights of individuals who have attained a certain age, have a achieved a specific grade level, or have received certain educational degrees. Specifically, the Answering Brief argues the following:

> "Unlike the case of a high school student, there is no self-evident educational or career harm inherent in the existence of the records at issue. Dr. Jensen has already obtained a terminal degree and there is no allegation on the record that any future educational opportunities

11

have been harmed.  ER 209, FAC  ¶ 10 (stating Dr. Jensen obtained a Ph.D. in 1984). And, unlike a high school student, it is not self-evident that Dr. Jensen will necessarily seek future employment. He alleges that he has been, and continues to be, employed at TMCC since 1996 (with tenure since 1999). *Id.* ¶ 9. There is not a single allegation that plausibly suggests Dr. Jensen is actively seeking new employment or that the records at issue are preventing such an effort. None of the obvious, ongoing harms attendant with a negative high school disciplinary record are alleged to be present here."  Answering Brief at 30-31.

First, denying individuals prospective injunctive relief that is based on civil rights violations because they have passed a certain age is dangerous.  Defendants-Appellees now seem to be implying in their Answering Brief that they are specifically targeting Dr. Jensen due to his age, in violation of the Equal Protection Clause of the Fourteenth Amendment.  If indeed age discrimination is at play for the refusal to remove negative records from Dr. Jensen's personnel files, that would open the floodgates to additional causes of action not part of the First Amended Complaint.  This further underscores the urgent importance of a swift reversal and remand, so that Dr. Jensen can file a Second Amended Complaint. Section 1983 was enacted specifically to provide a remedy for violations of constitutional and statutory rights and denying Dr. Jensen prospective injunctive relief based on his age falls squarely within this statutory mandate.  Failure to expunge negative files from his personnel files due to his age not only perpetuates discriminatory actions against Dr. Jensen but also sets a dangerous precedent for future discriminatory actions.  For this reason alone, it is important that this

honorable Court intervenes to prevent individuals being unjustly targeted due to their age and uphold the principles of equal protection under the law.

Second, Defendants-Appellees' argument above that prospective injunctive relief should be limited by grade level, i.e., high school students, misses the point of this Court's prior precedents cited in the Opening Brief. Opening Brief at 16-20. As with age discrimination, denying prospective injunctive relief based on grade level constitutes a form of discrimination under the Equal Protection Clause of the Fourteenth Amendment and is fundamentally unjust. This admission by Defendants-Appellees is particularly egregious given their roles as higher education administrators in Nevada. ER-209-211. Their arguments and actions not only violate Dr. Jensen's constitutional rights but also pose a significant threat to the integrity of our educational system. This conduct is dangerous and further highlights the need for an immediate injunction to be granted for Dr. Jensen to stop these ongoing violations of constitutional rights and federal law. There is an extremely strong public interest in ensuring that individuals are not denied their constitutional rights based on the grade level they have achieved.

Third, denying prospective injunctive relief to individuals with a certain educational background is not only outrageous but also constitutes a clear violation of the Equal Protection Clause of the Fourteenth Amendment. By refusing to expunge negative records from Dr. Jensen's personnel files based on his

13

educational attainment, Defendants-Appellees are effectively denying him equal access to educational opportunities guaranteed by federal law. How would this apply in practice across this Circuit? Would the cutoff be for only high school students? First year college students? Students with master's degrees but not terminal degrees? What about a medical doctor who returns to school to get advanced training or degrees? A lawyer who gets an LLM? What about a professional with a degree who decides to return to school to change careers later in life? The illogical and arbitrary nature of Defendants-Appellees' argument undermines the very principles of fairness and equal opportunity. It is also offensive to common notions of decency and fair play. Moreover, this discriminatory practice is not just legally unsound; it goes against the core values of our society. Lifelong learning and the pursuit of educational opportunities should be accessible to all individuals, regardless of their background or circumstances. History has shown that denying access to education is a grave injustice, and it is incumbent upon this honorable Court to prevent the resurrection of such discriminatory practices. These arguments are even more dangerous and extreme than the arguments put forth by the district court.

///

///

14

**D.** **Expunging negative personnel records, constituting ongoing civil rights violations, is imperative to safeguard academic freedom and free expression.**

While Defendants-Appellees attempt to dismiss Dr. Jensen's concerns as mere "ad hominem attacks" their characterization overlooks the crucial issue of accountability for constitutional civil rights violations and the dangers of failing to provide prospective injunctive relief for ongoing violations. The denial of prospective injunctive relief to expunge negative records from Dr. Jensen's personnel files not only fails to stop the ongoing violations of his civil rights but also sets a dangerous precedent for academic freedom and First Amendment rights. ER-27-28.

As mentioned above, Dr. Jensen was not exonerated – he was simply granted a reprieve from termination. At any time, Defendants-Appellees could subject Dr. Jensen to retaliation due to the presence of these negative records in his personnel files. This is not a hypothetical concern. Over a year after the Math Summit, Defendant-Appellee Flesher continued the pattern of manufacturing negative records against Dr. Jensen. ER-217-218. For example, Dr. Jensen was evaluated at the highest level of excellent and both Defendant-Appellee Ellsworth and Defendant-Appellee Flesher changed the evaluations in the two years following the distribution of his handout to "unsatisfactory" the lowest level. ER-215-218. They justified this retaliation by defaming him as being insubordinate for

15

simply trying to professionally communicate his concerns about a policy.  ER-215-216.  These inflammatory evaluations were used as grounds to investigate and humiliate Dr. Jensen.  ER-218-221.

Failing to allow prospective injunctive relief to expunge negative records creates a chilling effect on Dr. Jensen's academic freedom and First Amendment rights and opens the door to creating a culture of abuse as correctly argued in the Opening Brief.  Opening Brief at 23-25.  Denying legitimate prospective injunctive relief like expunging negative records in personnel files that represent ongoing harm to Dr. Jensen's professional reputation and future employment prospects takes away all remedies available to him for violations of his First Amendment rights.  Other similarly situated professors at NSHE would also likely be scared to exercise their academic freedom or First Amendment rights for fear of similar retaliatory mistreatment.  Any reasonable person would see these ongoing violations of civil rights as having a chilling effect on First Amendment rights and academic freedom.  Specifically, the clearly established right of an academic employee to speak on matters of public concern related to teaching or scholarship without fear of retaliation, so long as the speech is not disruptive or impacts the efficiency of public services.

This Court should reverse and remand the district court's ruling that sovereign immunity bars the prospective injunctive relief of expungement of negative records in personnel files as requested by Dr. Jensen.

## II. DEFENDANTS-APPELLEES WERE NOT ENTITLED TO QUALIFIED IMMUNITY SINCE DR. JENSEN HAS SHOWN THE LAW IS CLEARLY ESTABLISHED.

Defendants-Appellees and the district court have conceded or left uncontested that Dr. Jensen was the victim of a campaign that spanned multiple years to deny him his civil rights. ER207; ER-6-25. As already stated in the Opening Brief, the district court and Defendants-Appellees did not dispute that the First Amendment and Supreme Court case law has long established that the First Amendment protects a public employee's right to speak on "matters of public concern." *Demers*, 746 F.3d at 412 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)). Further, as stated in the Opening Brief, the Magistrate Judge Baldwin allowed discovery to proceed after she resolved the question of whether there was a clearly established right as required in this Court's prior decisions. *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010); *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). Magistrate Judge Baldwin denied the Motion to Stay Discovery that asserted the defense of qualified immunity. ER-294.

17

The right at issue in this case has been clearly established in the Ninth Circuit. Specifically, this honorable Court's opinion in *Demers v. Austin*, specifically held:

> "We hold that *Garcetti* does not apply to "speech related to scholarship or teaching." *Id.* at 425, 126 S.Ct. 1951. Rather, such speech is governed by *Pickering v. Board of Education,* 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968) (1968). In Demers's case, we conclude that the short pamphlet was related to scholarship or teaching, and that it addressed a matter of public concern under *Pickering.* We remand for further proceedings. We conclude, further, that there is insufficient evidence in the record to show that the in-progress book triggered retaliation against Demers. Finally, we conclude that defendants are entitled to qualified immunity, given the uncertain state of the law in the wake of *Garcetti." Demers,* 746 F.3d at 412.

The opinion went on to further hold that going forward that the *Pickering* line of cases applies when evaluating academic employee speech after *Garcetti*:

> "We conclude that *Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed "pursuant to the official duties" of a teacher and professor. We hold that academic employee speech not covered by *Garcetti* is protected under the First Amendment, using the analysis established in *Pickering*. The *Pickering* test has two parts. First, the employee must show that his or her speech addressed "matters of public concern." *Pickering,* 391 U.S. at 568, 88S.Ct. 1731;*see Connick,* 461 U.S. at 146, 103 S. Ct. 1684. Second, the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731;*see Cockrel v. Shelby Cnty. Sch. Dist.,*270 F.3d 1036, 1048 (6th Cir.2001); *Leary v. Daeschner,* 228 F.3d 729, 737 (6th Cir.2000)." *Demers*, 746 F.3d at 412.

18

The First Amended Complaint and Opposition to the Motion to Dismiss clearly alleged and argued that Defendants violated the clearly established right of academic employees to speak on matters of public concern related to teaching and scholarship.  ER-34-42; ER-212-233.  These rights are foundational to protecting free speech within the public sector.  ER-207-208; ER-171-179.

**A.    Dr. Jensen exercised a clearly established right and was retaliated against.**

The clearly established right that Dr. Jensen is invoking from *Demers v. Austin* is as follows: Academic employees have the right to engage in speech that deals with matters of public concern related to teaching and scholarship.  This right includes distributing handouts, publishing editorials, and participating in public meetings, without facing retaliation or other adverse employment actions, so long as the speech does not unreasonably disrupt or impede the efficiency of public services.   *See Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014); *Pickering v. Bd. of Educ*., 391 U.S. 563, 574 (1968); *Connick v. Myers*, 461 U.S. 138 (1983).

The district court and Defendants-Appellees have repeatedly stated that Dr. Jensen did not allege a clearly established right, but they failed to carefully read the First Amended Complaint.  Dr. Jensen specifically alleged a clearly established right:

> "96. Dr. Jensen has a clearly established federal right under the First
> Amendment of the United States Constitution to speak freely on a
> matter of public concern as a private citizen and as a professor at

19

TMCC. His speech at the Math Summit and handout are matters of public concern since they deal with academic standards, quality of education, enrollment, funding, and community expectations for higher education in Nevada. Further, Dr. Jensen's speech that criticized the deterioration of shared governance at TMCC also involves a clear matter of public concern." ER-222 (emphasis added).

Further, the First Amended Complaint specifically alleged that Defendants-

Appellees violated this clearly established right:

"98. The defendants violated Dr. Jensen's clearly established federal right by taking adverse action against him for distribution of his handout at the Math Summit on January 21, 2020. Dr. Jensen's speech was a substantial motivating factor for the adverse action that he suffered. These adverse actions, or retaliation, included, but are not limited to:
a. Condoning faculty shunning and humiliation of Dr. Jensen;
b. Providing annual reviews of his performance inconsistent with previous reviews that unfairly ranked Dr. Jensen's performance at the lowest level;
c. Producing annual performance evaluations that contain false statements and inconsistent evaluation criteria;
d. Failing to correct the annual reviews when confronted by Dr. Jensen with evidence and other explanations;
e. Subjecting Dr. Jensen to an unlawful investigation in violation of the NSHE Code that violated his Constitutionally protected due process rights;
f. Requesting and condoning an investigation that rendered false conclusions about Dr. Jensen that went beyond the scope of the matter;" ER-223 (emphasis added).

Defendants-Appellees and the district court have repeatedly characterized

Dr. Jensen's allegations in the First Amended Complaint as being written with a

"high level of generality." Answering Brief at 32. However, the allegations

above refute this characterization. While the complaint could benefit from further

20

amendment, which Dr. Jensen has requested, the existing allegations clearly demonstrate that Dr. Jensen engaged in academic employee speech on matters of public concern and faced retaliation as a result. Importantly, this retaliation extends beyond the events of the Math Summit and includes a letter of notice of reprimand, resignations from committees, letters of reprimand, accusatory emails, change of annual performance evaluations, not seriously considering multiple grievances, incorrect application of ranking criteria, improper investigations, and emotional trauma. ER-215-221.

By examining these concrete examples provided in the First Amended Complaint, it is obvious that Dr. Jensen was subject to specific adverse employment actions in retaliation for his speech on matters of public concern as an academic employee. While the complaint could be improved, the current allegations should be accepted as true, and therefore in a light most favorable to Dr. Jensen, which means the current allegations establish a prima facie case for retaliation for engaging in clearly established rights. *Manzarek*, 519 F.3d at 1031; *Kwan*, 854 F.3d at 1096.

Finally, Defendants-Appellees attempt to formulate the rule for Dr. Jensen from *Demers* is unpersuasive, illogical, and wrong since it is not based on any allegation in the First Amended Complaint. Answering Brief at 34. Further, there is no requirement that a complaint needs to separately plead out a rule, but if there

21

was such a rule Dr. Jensen did that as cited above. Further, the caselaw specifically states that even when there is "no case…. with the same facts" if a "reasonable official…. would have known that it was unlawful to retaliate" that is illegal. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1074 (9th Cir 2012). Here, retaliating against an academic employee for commenting professionally on matters of public concern in a nondisruptive manner violated the NSHE Handbook, NSHE Code, *State ex rel Richardson*, well established principles of academic freedom, *Demers*, *Pickering*, and *Connick*. *See* Opening Brief at 26-39.

**B.    Defendants-Appellees have not shown that Dr. Jensen was insubordinate.**

The sweeping argument put forth by Defendants-Appellees that Dr. Jensen was insubordinate is illogical and unpersuasive upon careful examination.

First, the insubordination claim is seriously undermined by the fact that the district court and Defendants-Appellees have conceded or left uncontested Dr. Jensen's status as a victim of civil rights violations.

Second, Defendant-Appellee Hilgersom's decision not to terminate Dr. Jensen's employment following two days of an administrative termination hearing strongly suggests a lack of merit to this argument.

Third, in Nevada to establish insubordination you must show the failure to follow a lawful written order or a "willful disregard of express or implied directions, or such a defiant attitude as to be equivalent thereto." *See State ex rel*

22

*Richardson v. Bd. of Regents*, 269 P.2d 265, 276 (Nev. 1954). This has not been established by Defendants-Appellees even though they had ample opportunities during the administrative hearing for this matter and in this litigation. This acknowledgment undermines any serious argument of insubordination, as Defendant-Appellee Ellsworth would have needed to demonstrate disruptive behavior, which is not likely given the public nature of the Math Summit. ER-31-33; ER-212-215.

Fourth, the distribution of the handout was during a break where Defendants-Appellees did not even have authority to even give directions to Dr. Jensen. Further, the directions as stated by Defendants-Appellees were given retroactively and only applied to the handout in one room. ER-213-215. It is also important to note that this direction only occurred after Dr. Jensen's civil rights had been violated. As alleged in the First Amended Complaint it could even be argued that Defendant-Appellee Ellsworth was disruptive during the event through her confrontation of Dr. Jensen at the event and in the hallway. ER-214-215.

Finally, the American Association of University Professors wrote a letter explaining that Dr. Jensen was not insubordinate for the speech in question or for the syllabus policies cited by Defendant-Appellee Ellsworth. ER-154-156

///

///

23

### C. Defendants-Appellees have not shown that Dr. Jensen was disruptive.

Four sworn declarations submitted under penalty of perjury all state clearly that Dr. Jensen was not disruptive and that he was singled out by Defendant-Appellee Ellsworth. ER-61-72. These declarations, which Defendants-Appellees did not challenge and which the district court ignored, offer firsthand accounts confirming that Dr. Jensen was not disruptive at the event. *Id.*

First, the declaration of Jeff Olsen specifically stated, "After other people were allowed to ask questions about proposed changes to our system of math courses, Lars stood up to ask his questions but was denied an opportunity to speak." ER-72.

Second, the declaration of Damien Ennis stated:

"3. I witnessed Dr. Jensen getting cut off immediately when he wanted to discuss his concerns about a reduction in rigor being imposed on the math curriculum during the question-and-answer session.
4. I did not find his behavior during the question portion of the event disruptive. I was in the Math 120 breakout room (RDMT 253) immediately following this interaction." ER-69.

Third, the declaration of Julia Hammett discusses both the interactions during the question-and-answer session and distribution of the handout and stated for both "I did not observe Dr. Jensen to be disruptive in any way." ER-65.

Fourth, the declaration of Keith Hooper stated, "I did not find Dr. Jensen's passing out of the handout to be disruptive to the meeting." ER-62.

24

The declarations provided above and in the record for this matter all unequivocally confirm that Dr. Jensen was not disruptive.

### D. Defendants-Appellees attempt to distinguish *Demers* is unpersuasive given the facts and well-established caselaw.

In *Demers*, Judge Fletcher explicitly held that the *Pickering* line of cases applies to public employee speech involving academic employees speaking on matters related to teaching and scholarship. *Demers,* 746 F.3d at 412. The *Pickering* case itself involved a teacher writing an editorial to the paper questioning the expenditure of money for certain programs. *Id.* In *Demers*, it involved a professor circulating a 7-Step Plan that called for a restructuring of the School of Communication and a request to seek national accreditation for the units. Defendants-Appellees attempt to claim that the handout needed to be a published book, but this assertion is in direct conflict with the opinion in *Demers*. Answering Brief at 35-36. Judge Fletcher specifically did not consider Dr. Demers' book because it had not been put into the record. *Demers*, 746 F.3d 402(9th Cir. 2014) (finding that the failure to include drafts of the *Ivory Tower* into the record provided the court with insufficient information to make a determination regarding retaliation). It should also be emphasized to this honorable Court that Dr. David Demers submitted a declaration in this case. In the declaration Dr. Demers specifically stated:

25

"In 2007, I printed the 7-step Plan flier on my laser jet printer and personally distributed it via postal mail, e-mail or in person to news media in Washington state, faculty, administrators, newspaper publishers, and the public. The 7-Step Plan was never published in an academic journal or any other scholarly outlet before the Ninth Circuit Court ruling." ER-181-188.

Here, Dr. Jensen's handout "On the Math Pathways – Looking under the Hood" specifically questioned the expenditure of money for statewide programs and policies. ER-236; ER-29; ER-61-62; ER-64-66; ER-68-69; ER-71-72. Further, Dr. Jensen submitted a declaration with three separate exhibits to the district court under penalty of perjury wherein he stated that he sent his concerns to at least 1,847 faculty and administrators, to the NSHE Chancellor, to all NSHE regents, and to four different media outlets. ER-190-203.

Finally, Defendants-Appellees attempt to frame this as a work event is unpersuasive and as mentioned in the Opposition to the Motion to Dismiss filed by Dr. Jensen in the district court there are factual issues surrounding the characterization of the event that should go before a jury. ER-31-32; ER-37-39.

### E. Defendants-Appellees attempt to distinguish *State ex rel Richardson* is unpersuasive and further demonstrates that the law in Nevada was not changed by *Garcetti.*

Defendants-Appellees attempt to narrowly interpret the seminal case of *State ex rel Richardson* for their Answering Brief is unpersuasive. Answering Brief at 44-45.

First, Dr. Frank Richardson, like Dr. Jensen, was circulating materials to question the expenditure of money for mathematics programs. *See State ex rel Richardson,* 70 Nev. at 347. This case was decided before the Supreme Court decided the *Keyishian* case, but the underlying principles are the same. *See Keyishian v. Bd. of Regents of Univ. of State of N.Y.,* 385 U.S. 589 (1967).

Second, unlike in *Demers* where the events arose at Washington State University in the state of Washington, this case was decided in Nevada. While admittedly *Garcetti* changed the landscape for a short period until this honorable Court calmed the waters with the decisions in *Eng* and *Demers,* in Nevada it has consistently remained illegal to retaliate against professors for questioning the use of public money through the distribution of handouts. Not only because of the *State ex rel Richardson* caselaw, but also the NSHE Handbook and NSHE Code both clearly prohibit retaliation against professors for this type of conduct. Opening Brief at 35-39.

Third, as stated in the Opening Brief the NSHE system has also through its Code protected academic freedom by incorporating the AAUP statements. This Court has recognized this in prior cases. *See Adamian v. Lombardi*, 608 F.2d 1224, 1227 (9th Cir. 1979), cert. denied, 446 U.S. 938 (1980).

27

Fourth, as clearly laid in multiple declarations, Dr. Jensen was not disruptive at any point, and by logical extension it would be hard to be insubordinate. ER-61-72. Further, not following an illegal direction is not insubordination. ER-215.

## III. PRIOR PROCEEDINGS

The district court's grant of the motion to dismiss without a thorough examination of the legal landscape within this Circuit or a comprehensive review of the record represents a departure from procedural fairness. Dr. Jensen's conduct throughout the proceedings was characterized by reasonableness and respect for judicial protocol. He refrained from excessive motion practice and diligently awaited the district court's ruling on the Motion to Dismiss before seeking leave to amend his complaint, a course of action supported by Magistrate Judge Baldwin's prior denial of Defendants-Appellees' Motion to Stay Discovery.

### A. Defendants-Appellees Mischaracterize Dr. Jensen's Legitimate Criticism.

Defendants-Appellees' attempt to portray Dr. Jensen's legitimate criticisms of the prior proceedings as questioning the integrity of the court is unwarranted and misleading. To the extent that such criticism is considered as such, it is withdrawn, but Dr. Jensen unequivocally denies any such intention. Dr. Jensen stands firm in his critique of the denial of oral argument, disregarded requests for judicial notice, failure to review Circuit caselaw, the refusal to grant leave to amend the Opposition to the Motion to Dismiss, and refusal to grant leave to file a second

28

amended complaint. These actions contravene the principles of Federal Rule of Civil Procedure 1 and hindered Dr. Jensen's pursuit of justice.

Furthermore, Defendants-Appellees' assertion that NSHE attorneys did not engage in extreme interpretations of personnel files is contradicted by the record. Magistrate Judge Baldwin's order for discovery to proceed and for Defendants-Appellees to produce relevant records underscores the validity of this claim and the need for judicial intervention at that time. If this case is reversed and remanded by this honorable Court, Dr. Jensen will add additional allegations in a Second Amended Complaint, produce additional evidence, and submit additional declarations that will show that this characterization is accurate.

**B.     The Case for Reversing and Remanding with Instructions to Grant Leave to file a Second Amended Complaint.**

Magistrate Judge Baldwin had already ruled that the defenses of sovereign immunity and qualified immunity did not apply after she had taken a "preliminary peek." ER-294. Discovery was still ongoing, which would have allowed Dr. Jensen the opportunity to obtain evidence that could have strengthened his complaint through amendment. ER-297. Dr. Jensen's request for leave to amend in the opposition to the motion to dismiss would have allowed further allegations for the events both prior to and after the Math Summit and further elaborated on the ongoing violations of his civil rights due to the inclusion of negative information in his personnel files. ER-49.

29

Further, Dr. Jensen alleged multiple property interests that were rejected by the district court. ER-42-43; ER-19. These procedural due process violations are ongoing because of the inclusion of negative information in Dr. Jensen' personnel files. ER-231-232. Dr. Jensen specifically requested leave to amend his complaint and would be better able to state how property rights were denied to him in a second amended complaint. ER-49. Leave to amend a complaint should "be applied with extreme liberality." *Eminence Capital, LLC*, 316 F.3d at 1051.

## CONCLUSION

In the Ninth Circuit there is a clearly established right of an academic employee to engage in speech on matters of public concern, without fear of retaliation or other adverse employment actions, so long as the speech is not disruptive or impedes the efficiency of public services. *Demers,* 746 F.3d at 412 (citing *Pickering,* 391 U.S. at 574*).* Defendants-Appellees persistently violated this clearly established right by retaliating against Dr. Jensen for professionally questioning a policy. This retaliation is ongoing due to the presence of negative records in Dr. Jensen's personnel files and the ongoing pattern and practice of Defendants-Appellees engaging in this illegal conduct. Allowing the district court's erroneous order to remain not only disregards this honorable Court's precedent but will have the long-term effect of chilling speech at institutions of higher education in the State of Nevada. It will also create precedent across this

30

Circuit that will undermine academic freedom, a cornerstone of American society. ER-27-28; ER-157-169.

These concerns are not theoretical and will have immediate tangible implications for civil rights. Denying a righteous case an adjudication on the merits, especially when civil rights violations have been conceded, due to technical pleading grounds, undermines the essence of civil rights protections. The district court's order dismissing the entire case not only runs counter to the spirit of Federal Rule of Civil Procedure 1, but also disregards this honorable Court's established precedent. Dr. Jensen deserves the opportunity for a fair adjudication before a jury of his peers.

For the foregoing reasons, Dr. Jensen respectfully requests that the judgment of the district court be reversed, and the case remanded for trial.

Date: April 9, 2024

> */s/ John M. Nolan*
> John M. Nolan
> *Attorney of Record for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman 14-point font.

DATED: April 9, 2024

*/s/ John M. Nolan*
JOHN M. NOLAN
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

DATED: April 9, 2024

*/s/ John M. Nolan*
JOHN M. NOLAN
*Attorney for Appellant*